# IN THE SUPREME COURT OF IOWA

No. 09–0146

Filed July 6, 2012

**STATE OF IOWA,**

Appellee,

vs.

**ARZEL JONES,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Marshall County, Michael J. Moon, Judge.

We granted further review of the court of appeals decision. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

Patrick C. Peters of Payer, Hunziker, Rhodes & Peters, LLP, Ames, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, Jennifer A. Miller, County Attorney, and Suzanne M. Lampkin, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

Following his sentencing to consecutive prison terms totaling thirty-five years, a criminal defendant asks us to review the district court's determinations that the written entry of the verdict was proper, that a fork is a dangerous weapon, that the State did not commit a *Brady*[1] violation or fail to disclose newly discovered evidence, that the defendant's trial counsel could not withdraw at the beginning of trial, and that the defendant knowingly and voluntarily waived his right to a jury trial. The court of appeals affirmed the district court's determinations. Pursuant to our discretion to decide issues after granting further review, we choose to only address whether Iowa Rule of Criminal Procedure 2.17(2) requires a trial court to announce the verdict in open court following a bench trial and whether the State committed a *Brady* violation. We let the opinion of the court of appeals stand as the final decision of this court on the other issues.

With regard to the rendering of the verdict, we hold rule 2.17(2) requires a trial court to announce the verdict in a recorded proceeding in open court. We find, however, that the district court cured its error and substantially complied with rule 2.17(2) in this case. We further hold the State did not commit a *Brady* violation. Accordingly, we affirm in part and vacate in part the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

In fall 2007, Arzel Jones met M.P. at the bar where she worked in Marshalltown. Shortly thereafter, they began a consensual sexual

---

[1]*See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97, 10 L. Ed. 2d 215, 218 (1963) (holding due process requires the prosecution to disclose exculpatory evidence to the accused).

relationship and saw each other on a daily basis. On November 30, Jones went to M.P.'s home and asked her to accompany him to his apartment to look at a damaged kitchen wall. When they arrived, M.P. noticed the wall was undamaged. Jones began accusing M.P. of being unfaithful in their relationship. Over the course of the next several hours, Jones punched M.P. in the chest two or three times, slapped her across the face, and slapped the back of her head.

After M.P. did not show up for work, M.P.'s ex-boyfriend called 911. In the call, he reported a "woman beating" and identified the victim as M.P. He described the attacker as a black male named "Kujo." When asked if M.P. and Kujo were outside, the ex-boyfriend replied, "No they're inside, but I guess a couple of days ago, whatever what happened was she ended up uh—he ended up choking her and she got a cut on her neck." Because he was not sure of the address, the ex-boyfriend gave the dispatcher directions to the location, described the location as a yellow apartment building, and stated a number of black individuals lived there.

When police responded to the call and knocked on the door of Jones's apartment, Jones covered M.P.'s mouth with his hand and placed his legs across her body, restraining her movement. After they did not hear a response, the police attempted to look in the apartment's windows, but could not note anything other than the lights were turned off. Jones forced M.P. into the bedroom and continued to cover her mouth. The police knocked at the door a second time, but again, no one responded.

After the police left, Jones told M.P. to call the police and her family. At the direction of Jones, M.P. informed them she was in Ames

with a friend. M.P. also called her employer and reported she would not make it to work that night because her grandmother was sick.

M.P. described her injuries as bruises to her chest and swelling on the side of her face and around her eye. M.P. did not believe Jones would let her return home and did not want her parents or son to see her injuries. Further, M.P. believed Jones felt sorry for his actions because he began displaying different behavior, which included purchasing ice packs and dinner for her. M.P. spent the weekend at Jones's apartment and left on the afternoon of December 3 to pick up her son from school.

M.P. went to work that night and was finishing a late shift at the bar during the early hours of December 4. Jones arrived at the bar, sat at a table where he could see M.P., and ordered several drinks. Just before the bar closed, Jones purchased a six-pack of beer and left. M.P. left work fearing that Jones was waiting for her in the parking lot. M.P. did not see Jones, but after she started her car, Jones got into the car with her. Jones ordered M.P. to drive to the gas station near his apartment. Upon arrival, Jones took the keys from the ignition and went into the store, leaving M.P. in the car. When Jones came out of the store, he ordered M.P. to get into the passenger seat so that he could drive. Although M.P. informed Jones she needed to go home, Jones drove them back to his apartment.

M.P. feared she could not escape and followed Jones into his apartment. Once inside, Jones locked the door and ordered M.P. to remove her clothes. During the next several hours, Jones forced M.P. to engage in nonconsensual sexual activity by holding a metal fork to her neck, threatened M.P.'s life, kicked M.P. in the face while wearing boots, punched M.P. in the chest, and strangled her.

Jones then forced M.P. to take a shower and drove her to the emergency room and two health clinics. He told her to tell the doctors and her parents that she had broken up a bar fight. However, Jones forced M.P. to leave each location before doctors could treat her.

M.P. finally went home on the afternoon of December 4. After M.P. told her parents that Jones had physically abused and sexually assaulted her, they contacted the police and took her to the hospital. M.P.'s treating physician testified M.P. had a laceration on the inside of her mouth, bruises and welts on her face, bruises on her chest and arm, and a welt on her neck. The physician estimated M.P. received the welt on her neck sometime in the preceding twelve to eighteen hours.

The State filed two trial informations. One charged Jones with third-degree kidnapping and domestic abuse assault causing bodily injury for the events occurring on November 30. The other charged Jones with first-degree kidnapping, attempt to commit murder, two counts of second-degree sexual abuse, first-degree harassment, and domestic abuse assault causing bodily injury for the events occurring on December 4.

Eight days before trial, a police officer who responded to Jones's apartment on November 30 referred to the 911 call during his deposition. Jones then requested a copy of the transcript detailing the call. The State did not provide a transcript to Jones until after trial.

Jones waived his right to a jury trial and a three-day bench trial began on January 23, 2008. The court did not reconvene the parties to announce the verdict. Instead, the court rendered its verdict on March 7 via a written order. The order detailed the court's findings of fact, conclusions of law, and found Jones guilty of third-degree kidnapping and domestic abuse assault causing bodily injury for the events taking

place on November 30, 2007. It also found Jones guilty of assault with intent to inflict serious bodily injury, second-degree sexual abuse, third-degree sexual abuse, and domestic abuse assault causing bodily injury for the events of December 4. The court later amended the verdict by written order, finding Jones guilty of assault causing bodily injury instead of domestic abuse assault causing bodily injury in each case because the State had failed to prove Jones and M.P. were in a relationship sufficient to give rise to domestic abuse assault.

Jones filed a combined motion in arrest of judgment and motion for new trial in which he raised all of the arguments at issue in this appeal. The district court held a hearing on November 21, 2008, to address Jones's motions. At the outset, the court recited the crimes for which it found Jones guilty. After the hearing, the court denied the motions. The court then sentenced Jones to consecutive prison sentences totaling thirty-five years. Jones appealed, and we transferred the case to the court of appeals. The court of appeals affirmed the district court. Jones filed an application for further review, which we granted.

**II. Issues.**

The court of appeals held the district court did not err in determining that the written entry of the verdict was proper, that a fork is a dangerous weapon, that the State did not commit a *Brady* violation or fail to disclose newly discovered evidence, that Jones's attorney could not withdraw at the beginning of the trial, and that Jones knowingly and voluntarily waived his right to a jury trial. When a party requests further review, we have the discretion to review all or part of any issue raised in the application for further review. *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009). In the exercise of our discretion, we

choose only to review whether the written entry of the verdict was proper and whether the State committed a *Brady* violation. Therefore, we will let the court of appeals opinion stand as the final decision in this appeal on the other issues raised. *See State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010).

### III. Standard of Review.

We review interpretations of the Iowa Rules of Criminal Procedure for correction of errors at law. *State v. Finn*, 469 N.W.2d 692, 693 (Iowa 1991). We review a trial court's ruling on an asserted *Brady* violation de novo because it is constitutional in nature. *Harrington v. State*, 659 N.W.2d 509, 519 (Iowa 2003).

### IV. Announcement of the Verdict.

**A. Interpretation of Iowa Rule of Criminal Procedure 2.17(2).** Rule 2.17(2) states, "In a case tried without a jury the court shall find the facts specially and on the record, separately stating its conclusions of law and rendering an appropriate verdict." Iowa R. Crim. P. 2.17(2). We must determine whether "on the record" as used in rule 2.17(2) requires the court to render the verdict in open court.

We have six other rules of criminal procedure that use the term "on the record" or "upon the record." *See* Iowa Rs. Crim. P. 2.2(4), 2.11(8), 2.17(1), 2.22(5), 2.23(3)(*d*), 2.73(3). From our review of these rules, it is evident the meaning of "on the record" and "upon the record" vary. For example, rule 2.22(5) provides that the clerk of court shall enter a sealed verdict "upon the record and disclose it to the court as soon as practicable." *Id.* r. 2.22(5). The clerk of court is not in the courtroom with the defendant and does not address the defendant at any time in open court. By contrast, we have held that "on the record" as used in rule 2.17(1) requires "some in-court colloquy or personal contact

between the court and the defendant" in order to ensure the defendant knowingly, voluntarily, and intelligently waived his or her right to a jury trial. *See State v. Liddell*, 672 N.W.2d 805, 812 (Iowa 2003); *see also* Iowa R. Crim. P. 2.17(1).

Notably, in *Liddell*, we overruled precedent that interpreted rule 2.17(1) not to require an in-court colloquy. 672 N.W.2d at 813 (overruling *State v. Lawrence*, 344 N.W.2d 227 (Iowa 1984)). We made this determination based in part upon the legislative history of rule 2.17(1) and in part upon practical considerations. *See id.* at 811–13. We think it is illustrative to establish the legislative history of rule 2.17(1) once again.

As originally enacted in 1976 in conjunction with a major revision to the criminal code, Iowa Rule of Criminal Procedure 2.17(1) provided, "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in writing*."[2] 1976 Iowa Acts ch. 1245(2), § 1301 (emphasis added); *see also* 4 John L. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law and Procedure* § 951, at 206 (1979). However, before the rule became effective, the general assembly amended it to read, "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in a reported proceeding in open court*." 1977 Iowa Acts ch. 153, § 44 (emphasis added). Thus, the general assembly replaced "in writing" with "in a reported proceeding in open court."

In 1981, the general assembly amended the rule again. In relevant part, the rule now read, "Cases required to be tried by jury shall be so tried unless the defendant *voluntarily and intelligently waives a jury trial*

---

[2]Current rule 2.17 was originally Iowa Rule of Criminal Procedure 16.

*in writing and on the record . . . .*" 1981 Iowa Acts ch. 206, § 16 (emphasis added). Although in *Lawrence* we concluded the 1977 and 1981 amendments did not require a judge to engage in an in-court colloquy with the defendant, 344 N.W.2d at 229–30, we overruled that decision and held that "on the record" in the context of rule 2.17(1) is legislative shorthand for "in a reported proceeding in open court," *Liddell*, 672 N.W.2d at 812.

We have also had the occasion to interpret "on the record" as used in rule 2.23(3)(*d*), pertaining to the entry of judgments.[3] *See State v. Lumadue*, 622 N.W.2d 302, 304–05 (Iowa 2001); *State v. Johnson*, 445 N.W.2d 337, 342–44 (Iowa 1989). Like rule 2.17(1), the general assembly adopted rule 2.23(3)(*d*) in 1976. *See* 1976 Iowa Acts ch. 1245(2), § 1301. As originally enacted, rule 2.23(3)(*d*) provided:

> If no sufficient cause is shown why judgment should not be pronounced, and none appears to the court upon the record, judgment shall be rendered. Prior to such rendition, counsel for the defendant, and the defendant personally, shall be allowed to address the court where either wishes to make a statement in mitigation of punishment. In every case the court shall include in the judgment entry the number of the particular section of the Code under which the defendant is sentenced.

*Id.* However, before it became effective the general assembly added the following language to the end of the rule: "The court shall state on the record its reason for selecting the particular sentence." 1977 Iowa Acts ch. 153, § 66.

In *Johnson*, we held that after a sentencing hearing the reviewing court could look to the sentencing order to determine if the court gave adequate reasons for its sentence. 445 N.W.2d at 343–44. In other

---

[3]Current rule 2.23 was originally Iowa Rule of Criminal Procedure 22.3.

words, we held the sentencing hearing, at which the defendant was present, coupled with the written sentencing order complied with rule 2.23(3)(*d*)'s "on the record" requirement. *See id.* In *Lumadue*, we appeared to reaffirm our holding in *Johnson.* *Lumadue*, 622 N.W.2d at 304–05. In doing so, however, we indicated that defendants "are entitled to be informed, preferably face-to-face, about the consequences of their criminal acts." *Id.* at 305.

Consistent with the changes to rules 2.17(1) and 2.23(3)(*d*), the general assembly also amended rule 2.17(2) in 1977. When the general assembly enacted rule 2.17(2), it read as follows:

> In a case tried without a jury the court shall make a general finding. Where requested by any party before or during trial, the court shall find the facts specially and *in writing*, separately stating its conclusions of law and directing an appropriate judgment. A request for findings is not a condition precedent for review of the judgment.

1976 Iowa Acts ch. 1245(2), § 1301 (emphasis added). The next year, the general assembly amended the rule to substantially its present state. *See* 1977 Iowa Acts ch. 153, § 44. Notably, the general assembly replaced "in writing" with "on the record." *See id.* Thus, the rule now requires a court, following a bench trial, to "find the facts specially and on the record, separately stating its conclusions of law and rendering an appropriate verdict." Iowa R. Crim. P. 2.17(2).

We are mindful of the fact that we have made different interpretations of "on the record" in different rules. In this case, we could conclude that, by the timing of the amendments to rules 2.17(2) and 2.23(3)(*d*), the phrase "on the record" in rule 2.17(2) only requires the court to file a written verdict because the general assembly inserted "on the record" in both rules at the same time. However, we decided *Liddell* after *Lawrence, Johnson,* and *Lumadue.* We overruled *Lawrence*

just two years after indicating our preference in *Lumadue* for face-to-face interactions between the court and defendant. Therefore, we could conclude that, after *Liddell*, we retreated from our prior authority interpreting "on the record" to mean the filing of a written document because of practical considerations. Either conclusion is plausible.

To decide which way to interpret rule 2.17(2), we start with the principle that we strive to avoid constitutional problems when we interpret our rules. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 74 (Iowa 2010). If possible, we will construe a rule to avoid doubts as to its constitutionality. *Id.* Applying this principle, we have found only one case discussing the constitutionality of a court not returning its verdict in open court.[4] *See United States v. Canady*, 126 F.3d 352 (2d Cir. 1997).

In *Canady*, the district court did not reconvene court to announce its verdict after a bench trial. *Id.* at 355. On appeal, the Second Circuit Court of Appeals noted:

> The defendant's right to be present at every stage of trial is "scarcely less important to the accused than the right of trial itself," and is rooted in both the Sixth Amendment Confrontation Clause and the Fifth Amendment Due Process Clause.

*Id.* at 360 (citations omitted). The court then held that the announcement of the verdict is a critical stage of the trial and that the defendant had a constitutional right to be present for the announcement of the verdict. *Id.* at 361. Although the government argued it would serve no useful purpose for the defendant to be present when the court

---

[4]We recognize that *Commonwealth v. Hembree*, 751 A.2d 202, 203 (Pa. Super. Ct. 2000), states that neither the Pennsylvania nor United States Constitutions guarantee a criminal defendant the right to receive a nonjury verdict in open court. However, this holding is without analysis and conflicts with *United States v. Canady*, 126 F.3d 352, 361–63 (2d Cir. 1997).

returns its verdict after a bench trial, the Second Circuit disagreed, stating:

> There is a distinctly useful purpose in ensuring that the pronouncement of the defendant's guilt or innocence by the court is both face-to-face and public. It assures that the trial court is "keenly alive to a sense of [its] responsibility and to the importance of [its] functions." When sentence is orally imposed, we have consistently held that it is "critical that the defendant be present." We see no reason why a defendant's presence is less critical when the court, instead of the jury, renders its decision as to the ultimate issue of whether the defendant is guilty or innocent. In the jury context, several courts, in rejecting the argument that the defendant's presence is useless, have pointed to the fact that the defendant's mere presence exerts a "psychological influence upon the jury." This is because the jury in deliberating towards a decision knows that it must tell the defendant directly of its decision in the solemnity of the courtroom. We fail to see how the situation is any different when the fact finder is the district judge.

*Id.* at 361–62 (citations omitted). The court also found that the failure of the court to read the verdict in open court violated the defendant's Sixth Amendment right to a public trial. *Id.* at 363.

We agree with the proposition in *Canady* that a defendant's presence exerts a psychological influence on a judge in the same manner as it would a juror. When a defendant waives a jury trial, the judge decides the case in the same manner as a juror. Just as a juror would, the judge listens to the evidence, determines the facts, and applies the facts as found to the law. A judge's legal training does not include how to determine the credibility of witnesses or disputed facts.

We are unable to find any reported cases in which a judge has changed his or her verdict when delivering it to a defendant in open court. The reason for this is simple. If a judge changes his or her verdict, the judge will do so without noting it on the record. Even though jurors very rarely change their verdict when polled, the possibility that

they may change their verdict requires a court to insist that the jury return its verdict in the presence of the defendant. We cannot state with certainty that the defendant's presence in court when the judge returns his or her verdict would not have the same effect on a judge as it would on a juror.

Additionally, trials in this country are not to be held in secret. The requirement that verdicts be announced in open court "vindicates the judicial system's symbolic interest in maintaining the appearance of justice and its pragmatic interest in giving the finder of fact a final opportunity to change its decision." *Canady*, 126 F.3d at 362 (citation and internal quotation marks omitted). We agree with the Second Circuit that "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Id.* (citation and internal quotation marks omitted). Our court reflects these principles with our present practice of streaming our proceedings live on the internet and holding oral arguments in various parts of the state in order for the public to view the work of the court.

Therefore, to avoid a possible conflict with the Fifth and Sixth Amendments to the United States Constitution, we interpret rule 2.17(2) to require the court to reconvene the proceedings and announce its verdict in open court, unless the defendant has waived his or her right to receive the verdict in open court.[5] We expect most defendants will waive

---

[5]By this ruling, we are not commenting on whether our decisions in *Johnson* and *Lumadue* are correct. It should be noted that when the defendant was sentenced in those cases, the defendant was present in court and had an opportunity to address the judge as to any reasons why the judge handed down the sentence. In the case in which the defendant is not in the courtroom when the court renders its verdict, the defendant does not have the same opportunity as the defendant who is present when his or her sentence is handed down.

the right to be present for the return of the verdict in a criminal case tried without a jury, just as most parties in a civil case waive their presence at the return of a jury verdict in a civil trial.

Several practical considerations also support our conclusion. First, upon a verdict of guilty, a defendant could decide to waive the court's use of a presentence report and his right of allocution, and instead elect to proceed directly to sentencing in order to leave the county jail to begin his prison sentence without delay. If the court renders its verdict in writing, thus necessitating that the court communicate the verdict in some manner other than in an open court proceeding, there may be a passage of time between the moment the court renders its decision and the moment the defendant receives it. This is not an issue of the defendant serving additional time because the defendant will receive credit for time already served. *See* Iowa Code § 903A.5 (2007). It is, however, an issue of the defendant serving additional time in the county jail instead of the state prison, where he or she could participate in certain prison programs.

A second practical reason concerns immediate challenges to the verdict. A defendant may want to challenge the court's verdict immediately by bringing to light a glaring error by the court. It is also possible the defendant will want the court to explain in more detail all or part of the verdict. A defendant cannot immediately challenge a verdict not rendered in open court. If the defendant cannot do so, it could add to the time he or she must spend in the county jail. For example, in this case, the court amended its verdict nearly a month later, finding Jones guilty of assault causing bodily injury instead of domestic abuse assault causing bodily injury. If the court had announced its verdict in open

court, Jones would have been able to bring the court's error to light immediately, and the court may have corrected it on the spot.

Third, after the rendering of a guilty verdict, trial courts have the discretion to defer judgment or the sentence. *See id.* § 907.3. Further, the defendant may ask the court for a deferred judgment or sentence. *See State v. Stessman*, 460 N.W.2d 461, 463 (Iowa 1990) (concluding a criminal defendant who requested a deferred judgment consented to a deferred judgment). Because the court can enter a deferred judgment or sentence immediately following the rendering of the verdict upon the defendant's request, a defendant who does not receive his or her verdict in open court may have to spend more time in the county jail waiting to receive the verdict and waiting to hear the court's response to his or her request. Granted, Jones would not have been eligible for a deferred judgment or sentence because the court found him guilty of committing forcible felonies. *See id.* §§ 702.11(1), 907.3. However, if rule 2.17(2) did not require the court to announce the verdict in open court, then the court would be permitted to render written verdicts following all bench trials unless we carved out a narrow exception for cases involving forcible felonies. This we decline to do.

Fourth, in order to mail the verdict to the parties, the court must send the verdict through the clerk's office. It is conceivable a member of the news media might be in the clerk's office, learn of the verdict, and then publish it prior to the defendant learning of it. *See Canady*, 126 F.3d at 359 (noting the defendant learned of his conviction by reading a newspaper two weeks after the district court mailed its decision).

Finally, a written verdict might not make it to the defendant at all. A verdict sent through the mail could be lost prior to receipt. It could be misplaced by a mail carrier or an attorney. It could be sent to an

attorney who is away on vacation and does not expect a verdict on a particular date.[6]  In any event, we do not want circumstances beyond the court's control to influence or dictate a criminal defendant's receipt of the verdict in his or her case.  Certainty as to when and where the defendant will receive the verdict is important.

**B. Remedy.**  Having determined the rule requires the court to announce the verdict in open court, we must determine the proper remedy.  In *Canady*, in which the court found the failure to return the verdict in open court to be a structural error, the court determined the proper remedy was to vacate the verdict and sentence, reconvene the trial, and announce the verdict in open court.  126 F.2d at 364.  In states where courts have found their rules to require a court to return the verdict in open court after a bench trial and where the court failed to do so but later read the verdict in open court at sentencing, the defendant was not entitled to any further relief.  *See State v. Cruz*, 550 P.2d 1086, 1088–89 (Ariz. Ct. App. 1976); *State v. Wolfe*, 103 S.W.3d 915, 917–18 (Mo. Ct. App. 2003); *see also Davis v. State*, 416 So. 2d 444, 447 (Ala. Crim. App. 1982) (refusing to grant further relief where, at sentencing, the judge publicly acknowledged his verdicts and afforded the defendant the opportunity to "say why sentence should not be passed").  The reason for this position is that the court rendered its verdict in open court with the defendant present, thus remedying any prior failure to do so.

In an analogous context, the United States Supreme Court held the failure to provide a defendant with a public proceeding demands a

---

[6]In this case, at the conclusion of trial on January 30, the court stated, "Thank you.  Matter is submitted.  I will take a look at it.  It won't be this week.  When I get a chance, I'll get a decision for you."  The court did not give the parties any indication as to when to expect the verdict.  The court did not render the verdict until March 7, and there is no indication in the record the parties knew to expect the verdict on that date.

remedy "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50, 104 S. Ct. 2210, 2217, 81 L. Ed. 2d 31, 41 (1984). There, the Court held a suppression hearing should not have been entirely closed to the public. *Id.* at 48, 104 S. Ct. at 2216, 81 L. Ed. 2d at 39. Instead of remanding the case for a new trial, the Court remanded the case for a public suppression hearing following a decision on which portions of the hearing may be closed. *Id.* at 50, 104 S. Ct. at 2217, 81 L. Ed. 2d at 41. The Court reasoned that, if the subsequent ruling would suppress the same evidence, then a new trial would be a windfall for the defendant and not in the interest of the public. *Id.* Accordingly, the Court concluded a new trial is warranted only when a new, public suppression hearing results in a "material change in the positions of the parties." *Id.*

We agree with the reasoning of the Supreme Court. We also agree with the state court decisions holding the defendant is not entitled to further relief if the court later reads the verdict at sentencing. *See Davis*, 416 So. 2d at 447; *Cruz*, 550 P.2d at 1088–89; *Wolfe*, 103 S.W.3d at 917–18. In this case, the district court recited its verdict in open court at the November 21, 2008 hearing on the combined motion in arrest of judgment and motion for a new trial. The reading of the verdict in open court would not change the evidence produced at trial or the verdict rendered by the court. Consequently, the court remedied its failure to announce the verdict in open court. Therefore, Jones is not entitled to any further relief.

**V. Exculpatory Evidence.**

Jones asserts the State committed a *Brady* violation by failing to disclose the transcript of a 911 call made by M.P.'s ex-boyfriend to police. To establish a *Brady* violation, Jones must prove by a preponderance of the evidence "(1) the prosecution suppressed evidence; (2) the evidence

was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011) (citation and internal quotation marks omitted); *accord Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286, 302 (1999). With regard to the first prong of the test, we recently stated, "The prosecution 'has a duty to learn of any favorable evidence known to . . . others acting on the government's behalf in the case, including the police.' " *DeSimone*, 803 N.W.2d at 103 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 1567, 131 L. Ed. 2d 490, 508 (1995)). "[W]hether the prosecutor succeeds or fails in meeting this obligation" is irrelevant. *Kyles*, 514 U.S. at 437–38, 115 S. Ct. at 1567–68, 131 L. Ed. 2d at 508. Further, the State must disclose evidence favorable to the defendant regardless of whether the defendant requests it. *DeSimone*, 803 N.W.2d at 103. This is because the "[n]ondisclosure of evidence is the touchstone for suppression; the good or bad faith of the prosecutor is not relevant." *Id.*

The court of appeals determined Jones waived his *Brady*-violation claim by conceding at the hearing on Jones's combined motion in arrest of judgment and motion for a new trial that the State did not have prior possession of the transcript. This purported concession is not clear from the record. Further, based on above principles, it is of no consequence that the prosecutor possessed or did not possess the call transcript prior to the verdict. The Marshalltown Police Department Communications Center maintained a record of the 911 call as evidenced by the fact that the State eventually provided Jones with a transcript. Therefore, the prosecutor had a duty to find the transcript or a recording of the call, assuming it was favorable to Jones.

With regard to the second prong of the *Brady* test, impeachment evidence constitutes evidence favorable to the accused and must be disclosed pursuant to *Brady*. *Id.* at 105. In this case, M.P.'s credibility was important to the State's case. If the transcript had been disclosed and Jones had used it effectively, it may have made a difference in the outcome of the case. *See id.* (" 'Impeachment evidence . . . if disclosed and used effectively . . . may make the difference between conviction and acquittal.' " (quoting *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481, 490 (1985))). It is possible Jones could have used the transcript to impeach M.P.'s testimony as to the source of her injuries. Therefore, we could find that the transcript constitutes evidence favorable to Jones.

Jones's claim, however, fails on the third prong of the test. An accused is denied due process only when the "suppressed evidence is material to the issue of guilt." *Id.* Evidence is material when " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.* (quoting *Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383, 87 L. Ed. 2d at 494). In evaluating materiality, we must take into account the possible effects nondisclosure had on the defense's trial strategy. *Id.* However, a "reasonable *possibility*" of a different outcome is not enough; materiality requires a "reasonable *probability*" of a different outcome. *Strickler*, 527 U.S. at 291, 119 S. Ct. at 1953, 144 L. Ed. 2d at 308.

The record in this case does not indicate more than a reasonable possibility of a different outcome. If we assume the information in the call is true, the call transcript indicates a black male named "Kujo" was beating M.P. inside an apartment on November 30. It also indicates "Kujo" choked M.P. a couple of days earlier, resulting in a cut on her

neck. Therefore, this incident would have occurred on November 28. Indeed, M.P. had a welt on her neck when she went to the hospital on December 4. However, her physician testified the injury occurred during the preceding twelve to eighteen hours. Granted, the State did not offer evidence indicating "Kujo" was Jones. However, the call transcript indicates M.P. received an injury to her neck six days earlier, which is inconsistent with the physician's testimony. Further, it does not mention any other injuries. Moreover, even though M.P.'s ex-boyfriend referred to "Kujo" and not Jones, the call transcript describes Jones's apartment as the location where M.P. was being beaten at the time the call took place. Therefore, we cannot say the disclosure of the transcript of the 911 call prior to the verdict would have given rise to a reasonable probability of a different outcome. Accordingly, Jones's claim that the State committed a *Brady* violation fails.

## VI. Disposition.

We hold rule 2.17(2) requires a trial court to announce the verdict in a recorded proceeding in open court. We also hold the remedy ordinarily is to vacate the conviction, vacate the sentence, and remand the case to allow the district court to announce the verdict in a recorded proceeding in open court pursuant to rule 2.17(2). Further, we hold the district court cured its error and substantially complied with rule 2.17(2) such that no remand is required in this case. Thus, we affirm Jones's conviction and sentence. Moreover, the State did not fail to disclose material exculpatory evidence. Finally, we let the court of appeals opinion stand as the final decision in this appeal as to whether the district court was correct in its determinations that a fork is a dangerous weapon, that the State did not fail to disclose newly discovered evidence, that the defendant's trial counsel could not withdraw at the beginning of

trial, and that the defendant knowingly and voluntarily waived his right to a jury trial.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Mansfield, J., Cady, C.J., and Waterman, J., who concur specially.

**MANSFIELD, J. (concurring specially).**

I agree that the defendant's convictions should be affirmed. However, I am unable to join part IV of the majority's opinion.

Our language is capable of many things, but I do not believe it allows us to interpret the expression "find the facts specially and on the record" as the majority has done. The majority reasons that the specific phrase "on the record" means "orally and in the presence of the defendant." However, construing the entire passage, the majority then goes on to say that it does not require the judge to tell the defendant what *facts* the judge has found. The judge only needs to tell the defendant what his or her *verdict* is. So according to the majority, "find the facts specially and on the record" really means "*tell the defendant orally in person what the verdict is.*" This insupportable rule interpretation is justified by the existence of a "possible" constitutional right not to be mailed the judge's verdict in a bench trial. I do not believe such a constitutional right exists, but in any event, the majority acts inappropriately in not addressing the constitutional question head-on and instead resorting to a contorted rule interpretation. *See In re Young*, 780 N.W.2d 726, 729 (Iowa 2010).

The principle that we interpret statutes to avoid unconstitutional results should be used judiciously. It is only a rule of construction and only one of several such rules. *See* Iowa Code § 4.4(1) (2007) (stating that "[i]n enacting a statute, it is presumed that . . . [c]ompliance with the Constitutions of the state and of the United States is intended"). When we rely on that rule to reach an implausible interpretation when the more plausible interpretation would also be constitutional, as it is

here, we are reshaping what the legislature gave us and exceeding our proper role.

## I. The Meaning of "Find the Facts Specially and On the Record."

The phrase "on the record" is used at seven different places in the Iowa Rules of Criminal Procedure—rule 2.2(4)(*a*), rule 2.2(4)(*d*), rule 2.11(8), rule 2.17(1), rule 2.17(2), rule 2.23(3)(*d*), and rule 2.73(3).

Rule 2.2(4)(*a*) states in part:

> *Preliminary hearing.* The magistrate shall inform the defendant of the right to a preliminary hearing unless the defendant is indicted by a grant jury or a trial information is filed against the defendant or unless preliminary hearing is waived in writing or *on the record.*

(Emphasis added.)

Rule 2.2(4)(*d*) states in part:

> *Private hearing.* Upon defendant's request and after making specific findings *on the record* that: (1) there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, (2) reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights, the magistrate may exclude from the hearing all persons except the magistrate, the magistrate's clerk, the peace officer who has custody of the defendant, a court reporter, the attorney or attorneys representing the state, a peace officer selected by the attorney representing the state, the defendant, and the defendant's counsel.

(Emphasis added.)

Rule 2.11(8) provides:

> *Ruling on motion.* A pretrial motion shall be determined without unreasonable delay. Where factual issues are involved in determining a motion, the court shall state its essential findings *on the record.*

(Emphasis added.)

Rule 2.17(1) states in part:

> *Trial by jury.* Cases required to be tried by jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and *on the record* within 30 days after arraignment, or if no waiver is made within 30 days after arraignment the defendant may waive within ten days after the completion of discovery, but not later than ten days prior to the date set for trial, as provided in these rules for good cause shown, and after such times only with the consent of the prosecuting attorney.

(Emphasis added.)

Rule 2.17(2) provides:

> *Findings.* In a case tried without a jury the court shall find the facts specially and *on the record,* separately stating its conclusions of law and rendering an appropriate verdict.

(Emphasis added.)

Rule 2.23(3)(*d*) states:

> *Judgment entered.* If no sufficient cause is shown why judgment should not be pronounced, and none appears to the court upon the record, judgment shall be rendered. Prior to such rendition, counsel for the defendant, and the defendant personally, shall be allowed to address the court where either wishes to make a statement in mitigation of punishment. In every case the court shall include in the judgment entry the number of the particular section of the Code under which the defendant is sentenced. The court shall state *on the record* its reason for selecting the particular sentence.

(Emphasis added.)

Finally, rule 2.73(3), relating to appeals in simple misdemeanor cases, provides that "the appeal shall be submitted to the court *on the record* and any briefs without oral argument, unless otherwise ordered by the court or its designee." (Emphasis added.)

Our cases and plain logic indicate that "on the record" does not mean the same thing in all seven contexts. As noted by my colleagues, we have interpreted "on the record" as used in rule 2.17(1) to require an

in-person colloquy with the defendant. *State v. Liddell*, 672 N.W.2d 805, 811–12 (Iowa 2003).

On the other hand, we have decided that "on the record" as used in rule 2.23(3)(*d*) includes a written judgment entry. *State v. Lumadue*, 622 N.W.2d 302, 304 (Iowa 2001); *State v. Johnson*, 445 N.W.2d 337, 342–43 (Iowa 1989). Thus, a defendant must waive a right to jury in open court, *Liddell*, 672 N.W.2d at 811–12, but a judge need *not* provide his or her reasons for a sentence in open court in the defendant's presence, *Johnson*, 445 N.W.2d at 342–43.

Also, although we have not previously decided what "on the record" means in rule 2.11(8), it seems highly unlikely that when the court rules on a pretrial motion, it has to do so in open court in the defendant's presence. Certainly, that is not the prevailing practice. Probably, "on the record" as used in rule 2.11(8) includes a written order.

And without doubt, "on the record" as used in rule 2.73(3) has nothing to do with the in-person presence of the defendant.

Additionally, rule 2.2(4)(*d*)'s reference to making specific findings "on the record" likely does not require those findings to be made in the defendant's presence. That rule was adopted following decisions of the United States Supreme Court and our court limiting the circumstances under which preliminary hearings could be closed. *See* 1989 Iowa Acts ch. 332 (now found at Iowa R. Crim. P. 2.2(4)(*d*)); *Press-Enter. Co. v. Sup. Ct.,* 478 U.S. 1, 13–14, 106 S. Ct. 2735, 2743, 92 L. Ed. 2d 1, 13 (1986); *Des Moines Register & Tribune Co. v. Iowa Dist. Ct.*, 426 N.W.2d 142, 147–48 (Iowa 1988). The underlying concern seems to be that the specific findings would be reviewable on appeal; hence, "on the record." *Press-Enter.*, 478 U.S. at 13–14, 106 S. Ct. at 2743, 92 L. Ed. 2d at 13;

*Des Moines Register & Tribune Co.*, 426 N.W.2d at 148. Thus, a written finding would be sufficient.

Lastly, we have not interpreted "on the record" as used in rule 2.2(4)(*a*). It appears from the context to mean something other than "in writing." *See* Iowa R. Crim. P. 2.2(4)(*a*) (stating that the magistrate shall inform the defendant of the right to a preliminary hearing "unless the defendant is indicted by a grand jury or a trial information is filed against the defendant or unless preliminary hearing is waived *in writing or on the record*" (emphasis added)). But our precedent would indicate, at least indirectly, that it does *not* require an in-person colloquy with the defendant. *See State v. Brendeland*, 402 N.W.2d 444, 445 (Iowa 1987) (stating that "[d]efendant was bound by her lawyer's filing of the waiver of preliminary hearing").

We now have to decide what "on the record" means when the phrase is used in rule 2.17(2). Does it mean the same thing as it does in rule 2.17(1), or does it mean the same thing as it does in rules 2.23(3)(*d*) and (presumably) 2.11(8)? I believe the latter is the correct analogy for several reasons.

First, rule 2.17(2) is written like rules 2.11(8) and 2.23(3)(*d*). It speaks in terms of the court doing something "on the record." Rule 2.17(1), by contrast, says that a valid waiver by a defendant must be "in writing *and* on the record." (Emphasis added.) This difference is significant. If the phrase "on the record" as used in rule 2.17(1) could be satisfied with a written waiver, then the rule would not make sense. In that context "on the record" has to mean something other than "in writing." Thus, rule 2.17(1) is best understood as requiring the jury waiver occur in writing and "in a reported proceeding in open court." *Liddell*, 672 N.W.2d at 812. Because the "in writing" language is not

contained in 2.17(2) and we are talking about a court action that is simply "on the record," there is no apparent reason why we should interpret rule 2.17(2) differently from rules 2.11(8) and 2.23(3)(*d*). *See Johnson*, 445 N.W.2d at 342–43 (interpreting "the record" in the context of rule 2.23(3)(*d*) to consist of "[t]he original papers and exhibits filed in the trial court, the transcript of proceedings, if any, and a certified copy of the docket and court calendar entries" (citation and internal quotation marks omitted)). Why should "on the record" when the court is pronouncing its sentence mean something different from "on the record" when the court is pronouncing its verdict?

Typically, when we think of court actions that are "on the record," we have in mind events that become part of the official court record. *See id.* This is to be contrasted with matters that are "off the record." *See Black's Law Dictionary* 1123 (8th ed. 2004) (defining "on the record" to mean "recorded as official evidence of a proceeding, such as a trial or deposition" or "intended for quotation or attribution"). In this sense, something can become part of the official record whether it is a writing or whether it is said aloud before a court reporter. While the context gives us a good reason not to adhere to this definition in the case of rule 2.17(1), there is no contextual reason to abandon the normal understanding of "on the record" with respect to rule 2.17(2).

Moreover, the majority fails to address the rest of the language in rule 2.17(2). As noted, the rule states:

> *Findings.* In a case tried without a jury the court shall find the facts specially and on the record, separately stating its conclusions of law and rendering an appropriate verdict.

The court reads the rule as requiring the court "to announce the verdict in open court," but not as requiring it to state its factual findings in open

court. However, this reverses the way in which the rule is written. It does not say, "The court shall find the facts specially, rendering an appropriate verdict on the record." It says, "[T]he court shall find the facts specially and on the record, . . . rendering an appropriate verdict." In the words, according to the rule, the facts and not the verdict need to be on the record. In *Liddell*, we held that "on the record" requires the court to address the defendant in person and tell the defendant what rights he or she is waiving. 672 N.W.2d at 812–14. If "on the record" here does not require the court to read the factual findings aloud, then "on the record" here does not mean the same thing it meant in *Liddell*.

My colleagues try to make some hay out of the legislative history, but their bales are meager. If we go back to the 1977 legislation, we can see that the legislature made several amendments at the same time to what have since become rules 2.2(4)(*a*), 2.17(1), 2.17(2), and 2.23. Those amendments are enlightening and read as follows:

> Rule two (2), subsection four (4), paragraph a [now rule 2.2(4)(*a*)]:
>
>     a. PRELIMINARY HEARING. The magistrate shall inform the defendant that he or she is entitled to a preliminary hearing unless the defendant is indicted by a grand jury or a ~~true~~ <u>trial</u> information is filed against the defendant or unless he or she waives the preliminary hearing <u>in writing or on the record</u>. . . .
>
>     . . . .
>
>     Rule 16 [now rule 2.17]. TRIAL BY JURY OR BY COURT.
>
>     1. TRIAL BY COURT ALLOWED. Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial ~~in writing~~<u>in a reported proceeding in open court</u>.
>     2. FINDINGS. In a case tried without a jury the court shall ~~make a general finding. Where requested by any party before or during trial, the court shall~~ find the facts specially and ~~in writing~~ <u>on the record</u>, separately stating its conclusions of law and directing an appropriate judgment. ~~A~~

~~request for findings is not a condition precedent for review of the judgment.~~

. . . .

Rule twenty-two (22), subsection three (3), paragraph d [now rule 2.23]:

d. JUDGMENT ENTERED. If no sufficient cause is shown why judgment should not be pronounced, and none appears to the court upon the record, judgment shall be rendered. Prior to such rendition, counsel for the defendant, and the defendant personally, shall be allowed to address the court where either wishes to make a statement in mitigation of punishment. In every case the court shall include in the judgment entry the number of the particular section of the Code under which the defendant is sentenced. <u>The court shall state on the record its reason for selecting the particular sentence.</u>

1977 Iowa Acts ch. 153 §§ 6, 44, 66.

Reviewing those amendments together, we can see that the legislature simultaneously inserted the phrase "on the record" in three locations. Significantly, the legislature in 1977 did *not* adopt the phrase "on the record" with respect to the jury waiver (current rule 2.17(1)). Instead, it changed the prior language—"in writing"—to read "in a reported proceeding in open court." If the legislature had intended to harmonize the two subsections of 2.17, it is odd that it substituted different phrases in each subsection—"in a reported proceeding in open court" in 2.17(1) and "on the record" in 2.17(2). This suggests that the legislature wanted two different things: The jury waiver had to be in open court in the presence of a court reporter, but the verdict could be rendered in writing *or* in a recorded proceeding in open court.

My colleagues point out that when the legislature rewrote both halves of what is now rule 2.17 in 1977, it removed the phrase "in writing" from both subsections. But this proves nothing because, as noted, the legislature replaced "in writing" with two different phrases—"in

a reported proceeding in open court" in subsection (1) and "on the record" in subsection (2). From this fact, the more logical inference is that the legislature intended two different modifications. Or the legislature could have intended to modify one part of the rule and merely clarify the other part. *See NextEra Energy Resources, LLC v. Iowa Utils. Bd.*, __ N.W.2d __, __ (Iowa 2012) (noting that amendments either can be clarifying or can change the meaning of a law). The more illogical inference is that the legislature took two identical phrases in the same section and replaced them with two different phrases with the intention that the two different phrases would actually mean the same thing.

Accordingly, I agree with the court of appeals that rule 2.17(2) "does not have an analogous history [as compared to rule 2.17(1)] requiring a trial court's verdict to be given in a reported proceeding in open court."[7]

## II. The Constitutional Question.

Having demonstrated why I believe the majority's interpretation of rule 2.17(2) is incorrect, I now turn to the majority's view that we should adopt it nonetheless to avoid constitutional problems. As noted by the majority, its avoidance argument essentially rests on one federal appellate case. *See United States v. Canady*, 126 F.3d 352 (2d Cir. 1997). I am not persuaded by this isolated decision. *Canady* reasons in

---

[7]It is true that in 1981, the legislature made further amendments to what became rule 2.17(1), introducing the "on the record" terminology:

> 1. TRIAL BY ~~COURT ALLOWED~~ <u>JURY</u>. Cases required to be tried by jury shall be so tried unless the defendant <u>voluntarily and intelligently</u> waives a jury trial in ~~a reported proceeding in open court~~ <u>writing and on the record</u> . . . .

1981 Iowa Acts ch. 206 § 16. However, I do not think legislation four years later is a particularly helpful guide to what the legislature meant in 1977.

a paragraph that the defendant's presence at the rendering of the verdict is constitutionally required to assure that the court is " 'keenly alive to a sense of [its] responsibility and to the importance of [its] functions.' " *Id.* at 361 (quoting *Waller v. Georgia*, 467 U.S. 39, 46, 104 S. Ct. 2210, 2215, 81 L. Ed. 2d 31, 38 (1984)). This strikes me as overstated. The United States Supreme Court has said that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667, 96 L. Ed. 2d 631, 647 (1987). The defendant "has a due process right 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S. Ct. 330, 332, 78 L. Ed. 674, 678 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1, 3, 84 S. Ct. 1489, 1491, 12 L. Ed. 2d at 654, 656 (1964)). While I fully agree that the defendant has a constitutional right to be present when a jury verdict is returned, this right is based on important considerations peculiar to jury trials, such as the defendant's right to face the jurors personally, the defendant's right to poll the jury, the potential for jurors to draw adverse inferences from the defendant's absence, and the need to take immediate action if there is an inconsistency in the jury verdict. *See Larson v. Tansy*, 911 F.2d 392, 395–96 (10th Cir. 1990); *see also Canady*, 126 F.3d at 361. I do not believe a district judge needs to have the defendant present when he or she issues a decision in a bench trial in order to be impressed with the importance of what he or she is doing.[8]

---

[8]My colleagues also argue that "trials in this country are not to be held in

The caselaw here is not monolithic. In *State v. Wolfe*, the Missouri Court of Appeals found that no plain error had occurred when a trial court failed to render its verdict in open court. 103 S.W.3d 915, 917–18 (Mo. Ct. App. 2003). As the court explained, "No case in Missouri, cited to or found by us, expressly refers to a constitutional or statutory right of a defendant to be present at the pronouncement of guilt in a court-tried case." *Id.* at 917. That court cited two out-of-state cases in support of its decision. *Id.* at 917–18 (citing *Davis v. State*, 416 So. 2d 444 (Ala. Crim. App. 1982), and *State v. Cruz*, 550 P.2d 1086 (Ariz. Ct. App. 1976)); *see also Bailey v. State*, 419 A.2d 925, 927 (Del. 1980) (stating that "in a non-jury trial, we can think of no purpose to be served by having a defendant, already in custody, taken to court for the sole purpose of having a letter opinion verdict read to him"); *Commonwealth v. Hembree*, 751 A.2d 202, 203 (Pa. Super. Ct. 2000) (holding, albeit without analysis, that neither the Pennsylvania Constitution nor the United States Constitution guarantees a criminal defendant the right to receive a nonjury verdict in open court). As a Washington appellate court put it:

> In the absence of some extraordinary circumstance in which the defendant's presence would have made a difference, we hold that presentation of findings and conclusions that formalize the court's decision, announced in the defendant's presence and based on proceedings at

---

secret." I agree, but do not understand how a decision in a bench trial that is filed with the clerk is any less public than one announced in open court. In fact, it is *more* public. Anyone can access that decision by going to the clerk's office or (hopefully soon) by retrieving it electronically. However, if the decision is merely announced in open court, public access is more problematic. Citizens likely will not have advance notice that the court has reached a decision and, therefore, will not be able to attend the proceeding where it is delivered in person. To obtain a copy afterward, they will have to contact the court reporter and order the transcript at their expense unless the transcript becomes part of the appellate record. All of this confirms, in my mind, that the alleged right is not one of constitutional dimensions.

> which he or she was present, is not a critical stage of the proceedings. A defendant's presence at the time findings and conclusions are entered does not have "a relation, reasonably substantial," to the fulness of his opportunity to defend against the charge.

*State v. Corbin*, 903 P.2d 999, 1002 (Wash. Ct. App. 1995) (quoting *In re Personal Restraint of Lord*, 868 P.2d 835, 844 (Wash. 1994)); *cf. State v. Pruitt*, 187 P.3d 326, 333–34 (Wash. Ct. App. 2008) (distinguishing *Corbin* where the defendant was absent for the trial itself).

The conceptual flaws in the majority's decision are further exposed by the majority's holding on remedy. According to the majority, any statutory or constitutional violation arising from a failure to bring the defendant back to the courtroom for the rendering of the verdict can be remedied by announcing the defendant's convictions at the sentencing hearing.[9] So much for the majority's suggestion that the defendant's personal presence *at the rendering of the verdict* is constitutionally required because of the possibility the judge might change his or her mind as to the defendant's guilt. Thus, the majority's "remedy" consists of nothing more than what routinely happens in any criminal case tried to the court. In any such case, the defendant has to be personally present for sentencing. In order to pronounce sentence, the court has to remind the defendant of what he or she has been convicted of.

Usually, the remedy defines the right. If a violation of the alleged "right" can always be remedied by business as usual, then the right

---

[9]I realize the majority claims to have decided the case on statutory rather than constitutional grounds and to have provided a statutory rather than a constitutional remedy. However, Jones raised both statutory and constitutional arguments. By deciding it was unnecessary to reach Jones's constitutional arguments, the majority necessarily decided that his remedy for a constitutional violation would have been no broader than his remedy for a statutory violation. Otherwise, my colleagues would have had to reach and definitively resolve Jones's constitutional arguments.

really amounts to nothing more than business as usual.  It diminishes the courts when they devote time to finding such "rights."

The majority also notes several "practical considerations" supporting its conclusion that judges should be required to render nonjury verdicts in criminal cases in the presence of the defendant.  Generally they are based on a questionable assumption that a verdict will get to the defendant more quickly if the defendant is required to receive it in person.  I think the potential for delay may be just as great if the defendant has to be in the courtroom before the court can render a verdict than if the verdict is sent to him or her, especially in these days of e-mail.  The majority says, "[W]e do not want circumstances beyond the court's control to influence or dictate a criminal defendant's receipt of the verdict in his or her case."  I don't know exactly what my colleagues mean by this, but I suspect that sometimes courts have less control over the physical movements of criminal defendants than they do over the mail or e-mail.

I personally think it is a good practice for a trial judge to have the defendant in the courtroom when rendering verdict.  As the *Canady* court noted, this reinforces the importance of what the court is doing in the solemnity of the courtroom.  126 F.3d at 361–62.  But I cannot read rule 2.17(2) or the United States or Iowa Constitutions as demanding this practice.  A strength of our legal system is that it follows many practices not because they are mandated by law or the Constitution but because they assure dignity and respect for our proceedings.

For the foregoing reasons, I would affirm the district court and uphold the court of appeals decision in its entirety.

Cady, C.J., and Waterman, J. join this special concurrence.