**IN THE COURT OF APPEALS OF IOWA**

No. 14-2140
Filed August 5, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NOAH TANNER DAHL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.


        Noah Dahl appeals from the sentence imposed upon his plea of guilty to willful injury causing bodily injury.  **AFFIRMED.**


        William L. Kutmus of Kutmus, Pennington & Hook, P.C., West Des Moines, and S.P. DeVolder of the DeVolder Law Firm, Norwalk, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Linda Fangman, County Attorney, and James Katcher, Assistant County Attorney, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Noah Dahl entered an *Alford* plea of guilty[1] to the charge of willful injury causing bodily injury, in violation of Iowa Code section 708.4(2) (2013). The sentencing court imposed an indeterminate five-year term of incarceration. On appeal, Dahl contends the court considered improper factors in sentencing. He also contends the State breached the plea agreement and his trial counsel was ineffective in failing to object. Finding no error, we affirm.

**I. Background facts.**

Noah Dahl was charged with willful injury causing serious injury, a class "C" felony, after an August 8, 2013 fight involving four teenage males—Dahl and a friend against two others. During the fight, Dahl cut a person five times with a box cutter. The victim had wounds to "his neck, lower left torso, left side of his back and his left shoulder." The emergency room notes indicate the victim "comes in with multiple stab wounds. . . . Pt. [patient] has laceration on front of neck, stab on left side of abdomen that is bleeding. Pt. also has superficial cuts to left back in three different areas." Another notation provides, "There is a complex laceration located over the anterior neck which is 5 cm in length. This wound will require surgical closure to stabilize wound edges and ensure optimal healing." Dahl raised a justification defense, claiming he acted in self-defense.

On September 5, 2014, Dahl entered an *Alford* plea of guilty to willful injury causing bodily injury, a class "D" felony, which is not a forcible felony.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding "[a]n individual accused of [a] crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime").

Under the plea agreement, both parties were free to argue for the sentence each hoped the judge would impose.

At the plea hearing, there were no objections made to the court's statement that "as a part of today's hearing I will be making a part of the record the contents of those minutes of testimony in support of a factual basis in accepting your plea." The defendant stated he understood and further agreed that the minutes of testimony would establish he was guilty beyond a reasonable doubt. The prosecutor made this record as to the evidence that would establish Dahl's guilt:

> We have several witnesses that would testify that Mr. Dahl, on August 8, 2013, had used a knife or box-cutter-type weapon to stab [victim] multiple times; that there was a[n] injury to the throat of [victim]; . . .
> We believe that particularly the wound to the throat would give [an] indication of the defendant's intent to inflict serious injury. There were, in fact, scars that were produced from these injuries. The scar to the throat being particularly visible to others.
> THE COURT: Allright. Well again, upon reviewing the minutes of testimony coupled with the statements of counsel, the Court does find that there is a sufficient factual basis to accept your pleas of guilty—or your plea of guilty here at this time.

The presentence investigation (PSI) report indicated Dahl was eligible for a deferred judgment and recommended a suspended sentence.

At sentencing, the State argued for a prison term, noting Dahl had not pled guilty outright but entered an *Alford* plea, had used a box cutter during the incident, and a message needed to be sent that anyone "us[ing] weapons is going to face a prison sentence."

Dahl's attorney argued for a deferred judgment, noting Dahl's young age, his educational goals, and his assertion of self-defense. Dahl's counsel argued:

As far as the plea is concerned it is true, Your Honor, Mr. Dahl did assert a defense of self-defense in the matter and he and I had lengthy discussions about, you know, how that worked and his involvement in that and what his involvement meant. To the extent that he's being taken to task here for an *Alford* plea, I will simply tell you that that simply arises out of the fact that he and I had discussions about his specific intent to cause a serious injury to [the victim] . . . .

Dahl exercised his right of allocution, stating:

I am sorry for everything that happened and I know I am at fault. There were many ways I could have prevented what happened. I could have told Dalton to stop talking to them. I could have stayed inside and I could have left. I'm sorry to [the victim] for everything you went through. I'm very grateful that he was not injured worse than he was.

I learned from this because I realize being a tough guy for one night doesn't help you at any time in your life. I'm sorry.

The sentencing court observed,

I have considered your request for deferred judgment. I did look at the PSI. I did look at, attached to the PSI, all of the letters of recommendation, and so I am cognizant of your request. I am—I do appreciate to the extent that you have a significant amount of support in the community, but in considering that against all the other issues . . . I just do not believe that a deferred judgment under these particular facts and circumstances is warranted. . . .

. . . .

To the extent that there's reference to your *Alford* plea, I understand in this particular circumstance your position on the *Alford* plea and I appreciate that. It's not that I don't understand it. I don't necessarily disagree with the State's contention when an individual enters a plea of guilty by virtue of an *Alford* plea, when they refuse to admit they even committed a crime and then request a deferred judgment, . . . .

In this particular case, based upon what your attorney told me and considering what I remember at the time of the plea, that it really went towards the issue of the specific intent, that I can appreciate that and I don't necessarily hold that fact you entered an *Alford* plea here against you. I certainly don't . . . .

The court considered a number of factors and determined that "given the nature of this offense and the fact that there was a weapon used" it would not suspend the sentence.

Dahl appeals, contending the sentencing court improperly considered his *Alford* plea and unproven offenses and conduct. He also asserts the prosecutor breached the plea agreement in raising the issue of the *Alford* plea and arguing he had not accepted responsibility or showed contrition.

**II. Scope and standard of review.**

A defendant's sentence is generally within the discretion of the trial court. *State v. Knight*, 701 N.W.2d 83, 85 (Iowa 2005). "But the use of an impermissible sentencing factor is an abuse of discretion and requires resentencing." *Id.*

**III. Discussion.**

*A. Alford plea.* Under an *Alford* plea, "'the defendant acknowledges the evidence strongly negates the defendant's claim of innocence and enters [a guilty] plea to avoid a harsher sentence.'" *Id.* (citation omitted). In *Knight*, 701 N.W.2d at 86-89, our supreme court discussed whether a sentencing court could properly consider that a defendant had entered an *Alford* plea. The supreme court stated, "[T]he defendant entering an *Alford* plea amidst claims of innocence is no different than a defendant found guilty amidst claims of innocence. The defendant's lack of remorse is a pertinent sentencing factor in both situations." *Id.* at 89. The *Knight* court held, "A sentencing court may properly consider a defendant's lack of remorse when choosing a sentence that will provide for the defendant's rehabilitation and protect the public from further offenses by the

defendant, so long as the court's lack-of-remorse finding is not based on the defendant's decision to stand trial." *Id.*

Dahl's attempt to pigeonhole the sentencing court's comments here concerning his *Alford* plea as improper are not convincing. The sentencing court stated it understood Dahl's defense was his claimed lack of specific intent to injure. In coming to its sentencing decision, however, the court discussed the PSI report, the letters of recommendations sent on the defendant's behalf, the nature of the offense, the danger the defendant's actions posed to the victim, the appropriateness of the plea agreement, the use of a weapon, and the defendant's poor choices. Based on those considerations, it determined a suspended sentence was not warranted in the circumstances. We find no error.

*B. Unproven offenses.* The district court is not permitted to consider unproven or unprosecuted charges when sentencing a defendant unless the facts clearly establish the offense was committed or the defendant admits the facts of the offense. *State v. Jose*, 636 N.W.2d 38, 41 (Iowa 2001). The defendant must make an affirmative showing that the district court relied upon improper evidence of unproven charges. *State v. Sailer*, 587 N.W.2d 756, 762 (Iowa 1998). A strong presumption works in favor of the sentencing discretion exercised by the district court. *State v. Peters*, 525 N.W.2d 854, 859 (Iowa 1994).

Here, Dahl asserts the following statement by the district court at sentencing establishes it considered unproven and uncharged offenses:

> You're lucky that [the prosecutor] didn't charge, when he allowed
> you to back off from that charge of the C felony, that he didn't
> pursue the sentencing enhancements dealing with Iowa Code

section 902.7 where you used a dangerous weapon. And a knife, or in this case a box cutter, under this particular fact pattern would have been a walk in the park to prove that was, in fact, a dangerous weapon. That it's capable of killing somebody when used in that fashion. And in doing so not only would you have been looking at prison, but you would have been looking at a mandatory minimum of five years before you were eligible for parole. And so you're lucky in that regard. You should be thankful in that regard.

. . . .

I think you will—ultimately you made a good decision. I think you made a good decision by accepting the plea offer here because as I've indicated, assuming the witnesses testified consistent with what I suspect they would, as the trial information reflects, you stood a substantial likelihood of being convicted of a forcible felony. And in all likelihood, maybe [the prosecutor] would have added that sentencing enhancement on the eve of trial and you'd have been looking at a five-year minimum [period of incarceration] to boot.

We disagree with Dahl's characterization of the court's statements as improperly considering unproven and uncharged offenses. Dahl admitted he used a box cutter, and the record shows the victim was cut on the neck. *Cf. State v. Ortiz*, 789 N.W.2d 761, 767 (Iowa 2010) (finding factual basis to support a box cutter used in a robbery was a dangerous weapon); *see also State v. Jones*, 817 N.W.2d 11, 13 (Iowa 2012) (letting stand the court of appeals *State v. Jones*, No. 09-0146, 2011 WL 5444091, *4 (Iowa Ct. App. Nov. 9, 2011), ruling that "[a] fork, used to stab . . . is capable of causing death, especially when causing an injury in a vulnerable place like the neck"). The victim appeared in court and offered a victim impact statement—the scar on his neck was evident, which the court remarked on. *See State v. Hanes*, 790 N.W.2d 545, 553-54 (Iowa 2010) (noting serious injury is defined by statute as a bodily injury including one that "creates a substantial risk of harm" or "causes serious permanent

disfigurement" and noting that "[s]carring may in some circumstances rise to the level of serious permanent disfigurement").

Here, Dahl *was* charged with a willful injury causing serious injury pursuant to Iowa Code section 708.4(1). Under Iowa Code section 702.11, the charged crime is a forcible felony. *Id.* at 551. Iowa Code section 907.3 prohibits the use of a deferred judgment and probation as sentencing options for a forcible felony such as willful injury causing serious injury. *Id.* The court's statements that Dahl was "lucky" do nothing more than acknowledge that by entering the guilty plea to the willful injury causing bodily injury, in violation of Iowa Code section 708.4(2), Dahl avoided the harsher sentence of the original charge. *See* Iowa Code § 702.11(2)(a) (specifically excluding violation of section 708.4(2) from definition of forcible felony). Dahl acknowledged as much in his plea hearing when he agreed that he had more to gain by pleading guilty than going to trial and that he wanted to take advantage of the plea bargain. *See Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Sturgeon*, 487 N.W.2d 338, 340 (Iowa 1992) ("An *Alford* plea allows a defendant to plead guilty without admitting the elements of the offense. In such a plea the defendant acknowledges the evidence strongly negates the defendant's claim of innocence and enters the plea to avoid a harsher sentence.").

C. *Ineffective-assistance-of-counsel claim.* In *State v. Fannon*, 799 N.W.2d 515, 520 (Iowa 2011), our supreme court recognized that violations of "either the terms or the spirit of the plea agreement" require reversal of the conviction or vacation of the sentence. There, as part of the plea agreement, the State had promised to make no sentencing recommendation. *Fannon*, 799

N.W.2d at 518. However, a different prosecutor appeared at sentencing and made a recommendation but withdrew that recommendation and "le[ft] the matter of consecutive versus concurrent up to the court." *Id.* The supreme court vacated the sentence imposed and remanded for resentencing, finding the State had breached the plea agreement, which could not be cured by the withdrawal of the prosecutor's comments. *Id.* at 522, 524.

Dahl argues the State's recommendation of a prison sentence and comments about Dahl entering into an *Alford* plea violated the plea agreement here. We disagree. The plea agreement allowed each party to argue for an appropriate sentence, which the State did. We affirm.

**AFFIRMED.**