STATE of Iowa, Appellee,

v.

James Thomas JOHNSON, Appellant.

No. 87–1438.

Supreme Court of Iowa.

Aug. 16, 1989.

Raymond E. Rogers, Acting State Public Defender, and James F. Whalen, Asst. State Public Defender, for appellant.

Thomas J. Miller, Atty. Gen., Julie Ann Halligan, Asst. Atty. Gen., John E. Billingsley, County Atty., and Cliff Wendel, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, CARTER and SNELL, JJ.

McGIVERIN, Chief Justice.

Defendant, James Thomas Johnson, appeals from his two convictions of sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3(2) (1985). He also appeals from the district court's order sentencing him to two consecutive twenty-five year terms in prison. On appeal, defendant contends: 1) that he was denied his right to effective assistance of trial counsel; 2) that he was denied a fair trial due to juror bias and misconduct; and 3) that the trial court failed to adequately state its reasons for sentencing him to two consecutive prison terms. The appeal was transferred to the court of appeals, which reversed, based upon defendant's ineffective assistance of counsel claim alone. We granted the State's application for further review. We now vacate the decision of the court of appeals and affirm the judgment and sentence of the district court.

I. *Background facts and proceedings.* From March 1983, until April 8, 1987, the date of his arrest, defendant lived together with his girlfriend, Donna, and her three daughters, Melissa, Kora and Lora. At the time of defendant's trial in July 1987, the three girls were 14, 11 and 9 years of age, respectively.

Defendant was charged, by an amended trial information, with three counts of sexual abuse involving the two younger girls, Kora and Lora.

At trial, the State presented the testimony of four witnesses: Kora, Lora, Susan Gauger, the coordinator of the Center for Child Neglect Evaluation at Iowa Lutheran Hospital in Des Moines, and Dr. Rizwan Shah, the director of the Child Sexual Assault Diagnostic Clinic at Broadlawns Medical Center in Des Moines.

In her testimony upon direct examination, Susan Gauger opined that Kora and Lora had been sexually abused. Upon redirect examination, Gauger opined that she believed the girls were telling the truth when they accused defendant of the sexual abuse. Gauger also opined that the two girls were credible. In addition, the State elicited testimony from Dr. Shah and Kora which defendant now claims was objectionable. During trial, however, no objections were raised to any of this testimony.

The case was submitted to a jury which returned a verdict of guilty on two counts

of sexual abuse in the second degree. Defendant subsequently filed a motion for a new trial, alleging that one juror, S.B., had personal knowledge of hearsay information prejudicial to defendant and that S.B. shared this outside information with the other members of the jury during their deliberations.

A subsequent examination of the jurors in the presence of the trial court revealed that juror S.B. informed the other jurors that one of the girls "broke down" and cried before a teacher at school and that he had heard rumors about defendant hitting the girls. Upon examination, S.B. confirmed that he had made these comments during jury deliberations. S.B. also explained, however, that he had stated before the court during jury selection voir dire that he knew the defendant, had spoken with him, and had heard rumors about him. Despite his background knowledge concerning defendant, S.B. was not challenged for cause, or stricken from the panel by counsel.

Defendant's motion for a new trial was denied.

Judgment and sentence were rendered upon the verdict.

At defendant's sentencing hearing, the State's attorney recommended defendant be sentenced to two consecutive twenty-five year terms of incarceration. Thereafter, the court sentenced defendant to two consecutive terms.

Defendant appealed. We transferred the case to the court of appeals, which reversed on defendant's ineffective assistance of counsel claim alone.

Thereafter, we granted the State's application for further review.

■ II. *Ineffective assistance of counsel.* Defendant contends that his right to effective assistance of counsel, guaranteed by the sixth amendment to the United States Constitution, was violated when his trial counsel failed to object to the admission into evidence of allegedly inadmissible testimony. Specifically, defendant identifies six instances where he believes that

objections to the evidence should have been made:

(1) counsel failed to object to Gauger's testimony that in her opinion the two children were telling the truth;

(2) counsel failed to object to Gauger's testimony that in her opinion the children had been sexually abused;

(3) counsel failed to object to the testimony of Dr. Shah that in her opinion the children had been sexually abused;

(4) counsel failed to object to Kora's testimony that defendant had committed sexual acts with another juvenile in an unrelated incident;

(5) counsel failed to object to Kora's testimony that her mother believed the two girls' allegations; and

(6) counsel failed to object to Kora's testimony concerning other criminal acts by defendant.

Ordinarily, when a limited remand is not requested under Iowa Rule of Appellate Procedure 12(g), we have considered postconviction proceedings under Iowa Code chapter 663A to be the best forum for resolution of ineffective assistance of counsel claims. *See State v. Powell,* 400 N.W.2d 562, 565 (Iowa 1987). This is so because in postconviction proceedings a full evidentiary hearing may be held, where counsel may respond to the defendant's charges or otherwise state for the record the reasons for actions which were taken at trial. *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978).

In *State v. Bass,* 385 N.W.2d 243, 245 (Iowa 1986), the defendant claimed ineffective assistance of counsel where his trial counsel failed to object to expert opinion testimony, presented by the State, that children almost never lie about child abuse. We declined to address the claim on direct appeal, however, because the defendant's trial counsel had not been given the opportunity to explain why no objection had been made. *Id.* As we stated in *Coil,* 264 N.W.2d at 296, "Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned."

We find the reasoning in *Bass* and *Coil* persuasive regarding defendant's first as-

signment of error in this case. The present record does not provide a sufficient basis upon which to determine counsel's effectiveness, her rationale in allowing admission of the evidence, or, for that matter, defendant's participation in those decisions. Therefore, we decline to consider defendant's ineffective assistance of counsel claim in this direct appeal. Defendant's claim has been adequately preserved, however, in order to be raised by application for postconviction relief. *Cf. State v. White*, 337 N.W.2d 517 (Iowa 1983) (defendant's bald assertion, on direct appeal, that trial counsel had rendered ineffective assistance did not preserve the issue for postconviction relief proceedings).

■ III. *Juror bias and misconduct.* Defendant also contends that he was denied a fair trial before a panel of impartial jurors. Specifically, he argues that he is entitled to a new trial under Iowa Rule of Criminal Procedure 23(2)(b)(2) (new trial may be granted when the jury has received evidence out of court not authorized by the court). This contention is based upon allegations that juror S.B. was aware of hearsay information prejudicial to defendant and that S.B. shared this outside information with the other members of the jury. Thus, defendant says juror S.B. was biased against defendant and committed misconduct as a juror.

Initially, we note that "[t]rial courts possess broad discretion in deciding whether evidence of alleged jury misconduct warrants a new trial. We do not find an abuse of discretion unless such discretion was exercised on grounds ... or to an extent clearly unreasonable." *State v. Christianson*, 337 N.W.2d 502, 504 (Iowa 1983) (citations omitted):

■ A. *Bias.* Defendant concedes that during jury selection voir dire S.B. honestly disclosed his prior knowledge concerning defendant. During a posttrial examination, S.B. stated, "[W]hen you two lawyers were picking the jury, I told you that I knew [the defendant], had talked to him, had heard the rumors." Nevertheless, defendant contends S.B. was biased and this fact was concealed during the jury selection process.

" 'It is well settled that known objections, or those which may be ascertained, are waived if no challenge is made before the jury is sworn.' ... Nonetheless, we have frequently looked at the subsequent evidence of juror bias or incompetence to determine if an appellant was prejudiced by denial of his tardy motion in cases ... where such appellant was previously unaware of the grounds for objection." *State v. Cuevas*, 288 N.W.2d 525, 534 (Iowa 1980) (quoting *State v. Grove*, 171 N.W.2d 519, 520 (Iowa 1969)).

Defendant's contentions regarding juror bias are groundless. First, defendant's allegations of concealment are contrary to the record. S.B.'s statements during the posttrial examination show that he was forthright and candid during jury selection voir dire. His statements concerning his prior knowledge of the defendant provided the parties adequate notice of any possible prejudice toward defendant. Any objection defendant may have had concerning the alleged bias of S.B. was waived. *See, e.g., Riessen v. Neville*, 425 N.W.2d 665, 668 (Iowa App.1988) (parties waived objections by failing to timely challenge hearing impaired juror, where juror noted impairment on questionnaire which was available to counsel during jury selection voir dire).

■ Second, even if defendant was previously unaware of any grounds for objection, insufficient evidence exists to indicate S.B. was biased against defendant. S.B. testified that he knew defendant only slightly. Furthermore, regarding the rumors to which S.B. had referred, S.B. stated that he "heard of [defendant] hitting [the children] but nothing sexual—nothing at all sexual." Importantly, at trial defendant admitted to hitting one of the girls. We believe the record is insufficient to support defendant's claim of juror bias. *Cf. Cuevas*, 288 N.W.2d at 534 (finding no evidence of bias where juror may have known slightly the criminal defendant).

Defendant failed to timely object to the allegedly biased juror. In addition, the record evidence does not support defendant's claim that juror S.B. was biased.

The district court correctly denied defendant's motion for a new trial on this ground.

B. *Misconduct.* Defendant also claims that he is entitled to a new trial because S.B. shared with the jury hearsay information prejudicial to defendant which was not admitted into evidence.

Consideration by a jury of matters outside the record may, under certain circumstances, require a new trial. *See* Iowa R.Crim.P. 23(2)(b)(2); *State v. Folck*, 325 N.W.2d 368, 372 (Iowa 1982). Iowa Rule of Criminal Procedure 23(2)(b)(2) provides that the district court may grant a new trial "[w]hen the jury has received any evidence, paper or document out of court not authorized by the court."

In order to receive a new trial on the basis of jury misconduct, three conditions must be met:

> (1) [E]vidence from the jurors must consist only of objective facts as to what actually occurred in or out of the jury room bearing on misconduct; (2) the acts or statements complained of must exceed tolerable bounds of jury deliberation; and (3) it must appear the misconduct was calculated to, and with reasonable probability did, influence the verdict.

*State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984). The trial court has broad discretion in ruling on these matters. *Id.*

■ 1. *Evidence of misconduct.* The first element of the *Cullen* test is governed by Iowa Rule of Evidence 606(b) which provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

(Emphasis added.)

In *Ryan v. Arneson*, 422 N.W.2d 491, 495 (Iowa 1988), we stated that rule 606(b) protects each of the components of the deliberation process, but that juror testimony may still be offered to show extraneous influences on the jury. *Id; accord Prendergast v. Smith Laboratories, Inc.*, 440 N.W.2d 880, 883 (Iowa 1989). Therefore, under rule 606(b), we may properly consider the testimony of the jurors in the present action which indicates that S.B. informed the other members of the panel that one of the children had "broken down" before a teacher at school, and that he had heard rumors about defendant hitting the girls. The remaining testimony from the jurors, concerning the impact these statements had upon their deliberation, the context in which these statements were made, and the number of ballots the panel went through, must be disregarded under the rule. *See Cullen*, 357 N.W.2d at 29 ("[O]ur cases are clear that statements by jurors, subsequent to deliberations, as to whether they were influenced by certain matters or to what degree they were influenced, are incompetent for the purpose of impeaching a verdict and must be ignored.").

■ 2. *The tolerable bounds of jury deliberation.* Jurors have "considerable latitude in their deliberations, and conduct or occurrences which are within tolerable limits are said to 'inhere in the verdict' or constitute no ground for 'impeachment of the verdict.'" *Harris v. Deere & Co.*, 263 N.W.2d 727, 730 (Iowa 1978). This latitude is necessary because, "[a]s a practical matter, courts cannot be too strict on jury discussions or few verdicts could stand." *State v. Lass*, 228 N.W.2d 758, 771 (Iowa 1975) (affirming denial of motion for a new trial which was based upon fact that several jurors related their personal observations of individuals suffering hypoglycemic and diabetic attacks).

Nevertheless, introduction of additional, outside information is beyond permissible bounds. "Trials are to be decided on facts produced in court under rules of evidence and subject to cross-examination." *State v. Folck*, 325 N.W.2d 368, 372 (Iowa 1982). S.B.'s statements improperly furnished information to the other members of the jury and violated the tolerable bounds of deliberations.

■ 3. *Influence on the verdict.* In order to prevail in his jury misconduct claim, however, defendant must also show that the misconduct was calculated to, and with reasonable probability did, influence the verdict. In resolving this question, the trial court may "examine the claimed influence critically in light of all the trial evidence, the demeanor of witnesses and the issues presented before making a common-sense evaluation of the alleged impact of the jury misconduct." *State v. Christianson*, 337 N.W.2d 502, 506 (Iowa 1983).

We have observed that past cases discussing this requirement demonstrate that it is not easily satisfied. *Cullen*, 357 N.W.2d at 28; *see, e.g., State v. Sauls*, 391 N.W.2d 239, 242 (Iowa 1986) (no reasonable probability that outside information affected the verdict where outside information could have been determined from evidence which was admitted at trial); *State v. Harrington*, 349 N.W.2d 758, 762–63 (Iowa 1984) (juror affidavits which stated that the jury discussed the fact that the defendant had on a previous occasion shot his brother, a fact which was not in evidence, failed to establish that misconduct was calculated to and did influence verdict to a reasonable probability); *Christianson*, 337 N.W.2d at 505–06 (juror's telephone call during deliberations, by which he obtained information impeaching a witness, fell short of showing reasonable probability that information affected verdict); *Folck*, 325 N.W.2d at 372–73 (jury's discussion of facts not contained in the record, including facts bearing on credibility of witnesses, could not have influenced verdict).

■ In this case, juror S.B.'s statements did not relate defendant to any alleged instances of sexual abuse; rather, his statements concerned the fact that rumors existed about defendant hitting the girls and the fact that one of the girls "broke down" before a school teacher.

We do not believe that the information regarding the rumors satisfies the reasonable probability of influence requirement. Defendant, on direct examination, testified that he had "smacked Melissa in the face" and that Melissa had filed a number of complaints against him with the Department of Human Services. S.B.'s statements concerning the rumors added little to the admissible evidence which the jury was already allowed to consider.

Similarly, we do not believe that the information regarding one of the girls breaking down before a school teacher satisfies the reasonable probability of influence requirement. S.B. was not aware of what caused the incident or, for that matter, which of the three girls was involved. Furthermore, other record evidence exists concerning instances wherein the two younger girls reported the instances of sexual abuse at issue to third persons, including State investigators. Once again, S.B.'s statement concerning one of the girls breaking down before a teacher added little to the admissible evidence which the jury was allowed to consider.

Based upon our review of the record, we conclude the district court acted within its discretion in denying defendant's motion for a new trial based upon jury misconduct.

IV. *Defendant's sentencing.* Defendant's final contention on appeal attacks the order by the district court sentencing him to two consecutive twenty-five year terms of incarceration. *See* Iowa Code §§ 709.1, 709.3(2), 901.8 and 902.9(1). Defendant contends the trial court failed to adequately state its reasons for ordering consecutive sentences under section 901.8 and that this failure requires that we remand the case for resentencing.

■ Iowa Rule of Criminal Procedure 22(3)(d) requires that the sentencing court "state on the record its reason for selecting the particular sentence" imposed. The "record" for purposes of criminal appeals

consists of "[t]he original papers and exhibits filed in the trial court, the transcript of proceedings, if any, and a certified copy of the docket and court calendar entries...." Iowa R.App.P. 10(a); *State v. Cooper*, 403 N.W.2d 800, 801 (Iowa App.1987). A statement may be sufficient, even if terse and succinct, so long as the brevity of the court's statement does not prevent review of the exercise of the trial court's sentencing discretion. *See, e.g., State v. Victor*, 310 N.W.2d 201, 205 (Iowa 1981).

■ At defendant's sentencing hearing, the court requested that the State's attorney give his recommendation regarding sentencing. The State's attorney responded, "It's my understanding that each of those two counts [of sexual abuse] deals with a separate individual, separate victim, therefore, I would ask the court to give good consideration to running the sentences consecutively because two different people were in fact victimized as determined by the jury." The court agreed, sentencing defendant to consecutive terms, stating in part that, "The Court finds that these are two separate offenses and that the sentences shall run consecutively."

Elaborating on its reasons for the sentences imposed, the court stated in its judgment entry that it had before it the presentence investigation report and that:

[T]he Court has considered the age of the defendant; the defendant's prior record of convictions and prior record of deferments of judgment, if any; the defendant's employment circumstances; the defendant's family circumstances; and the nature of the offense committed.

IT IS FURTHER FOUND that maximum opportunity for the rehabilitation of the defendant and the protection of the community from further offenses by the defendant, based upon the recommendations of counsel and the facts as presented to the Court, which were duly considered by the Court, will be realized by the below stated ORDER.

IT IS THEREFORE ORDERED that the defendant is sentenced under Section 902.9(1), Code of Iowa and is committed to the custody of the Director, Department of Corrections, State of Iowa for a term of no more than twenty-five (25) years on each COUNT....

IT IS THE FURTHER ORDER OF THE COURT, that the sentences imposed in this cause shall run consecutive.

The record shows defendant admitted to the presentence investigator that he previously had been convicted of several criminal offenses in Tennessee. It is apparent to us that the district court ordered the defendant to serve his sentences consecutively as part of an overall sentencing plan, the particular reasons for which appear in the sentencing colloquy, sentencing order, and presentence investigation report referred to by the district court. These parts of the record form a sufficient basis upon which to review the exercise of the trial court's sentencing discretion. *Cf. State v. Berney*, 378 N.W.2d 915, 920 (Iowa 1985) (sentencing colloquy and circumstances disclosed in presentence report showed that trial court did not abuse its discretion in sentencing defendant).

Defendant's reliance on *State v. Harrington*, 349 N.W.2d 758 (Iowa 1984), is misplaced. In *Harrington*, we remanded for resentencing where "[t]he trial court ... mentioned that the sentences for the two crimes for which defendant was convicted were mandatory, but did not state *any reason* why the two mandatory sentences were set to run consecutively." *Id.* at 763 (emphasis added). Moreover, in *Harrington* the State conceded error. *Id.* Neither point holds true in this case, because the trial court mentioned several reasons for imposing its sentence, singled out the fact that separate victims were affected by defendant's separate crimes, and, of course, the State does not concede error. In addition, the *Harrington* trial court's failure to elaborate on its reasons for sentencing the defendant to consecutive sentences left the impression that the trial court may have mistakenly believed that consecutive sentences were mandatory. *See id.* There is no suggestion of that possibility in this case.

We believe the court adequately stated its reasons for the consecutive sentences

imposed on defendant. No abuse of the court's discretion or rule 22(3)(d) appears here.

V. *Disposition.* On the issues resolved, we find no reversible error. We do not reach defendant's claim of ineffective assistance of counsel except to note the points described above are adequately preserved for review in any postconviction relief proceedings. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.