**STATE of Iowa, Appellee,**

**v.**

**Darel Jo TINIUS, Appellant.**

**No. 93–1370.**

Court of Appeals of Iowa.

Nov. 28, 1994.

Linda Del Gallo, State Appellate Defender, and Annette L. Hitchcock, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Sheryl A. Soich, Asst. Atty. Gen., and Brent D. Heeren, County Atty., for appellee.

Considered by DONIELSON, C.J., and CADY and HUITINK, JJ.

CADY, Judge.

This appeal requires us to examine the sufficiency of the evidence to support a conviction and the effect of jury misconduct involving the use of a dictionary during deliberations. On our review, we affirm the conviction.

Ron Cullor died as a result of a single car accident in the early morning hours of August 30, 1992. He was an occupant in the automobile with Darel Tinius and Jim Williams. The accident occurred when the vehicle left the traveled portion of the road and rolled. Tinius was Williams' girlfriend, and Cullor was her uncle. Tinius was charged with vehicular homicide and operating while intoxicated.

The central dispute at trial focused on the identity of the driver of the vehicle. The physical evidence at the crash scene and the expert testimony at trial suggested Tinius was driving, Williams was the front seat passenger, and Cullor was in the rear seat. It appeared Cullor was ejected from the hatchback window of the vehicle during the accident. Tinius and Williams testified Cullor was driving the vehicle at the time of the accident. Tinius was convicted as charged.

Tinius moved for a new trial following her conviction. She alleged juror misconduct. One juror admitted bringing a dictionary into the deliberations and reading the following definition of "reasonable" to the other jurors: "To use the faculty of reason to discover or formulate by the use of reason." The district court found the conduct harmless, and denied the motion.

The district court merged the two convictions and sentenced Tinius to a ten-year term of imprisonment. Tinius now appeals. She argues there was insufficient evidence to support her conviction and the trial judge erred in failing to grant her a new trial on account of the jury misconduct.

## I. Sufficiency of Evidence

Our scope of review is for errors at law. Iowa R.App.P. 4. A verdict will be upheld where there is substantial evidence in the record supporting each element of the charge. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means evidence which would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.*

In the search for substantial evidence, the record is viewed in the light most favorable to the State. *State v. Bass*, 349 N.W.2d 498, 500 (Iowa 1984). This beginning posture allows our inquiry to draw legitimate inferences and presumptions that fairly and reasonably arise from the evidence in the record. *Id.* Direct and circumstantial evidence are equally probative in the examina-

tion process. *State v. Hamilton*, 309 N.W.2d 471, 479 (Iowa 1981). All evidence, however, must be considered, not just evidence supporting the verdict. *Bass*, 349 N.W.2d at 500. In the end, the evidence must do more than raise suspicion, speculation or conjecture. *Hamilton*, 309 N.W.2d at 479. Due process mandates that no person face the consequences of a conviction without sufficient proof of guilt. *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 571 (1979).

■ To sustain a conviction in this case, the state was required to show Tinius unintentionally caused the death of another by operating a motor vehicle while intoxicated or while having an alcohol concentration of .10 or more. Iowa Code section 707.6A(1)(a) (1993). Tinius claims the evidence failed to establish the threshold element that she operated a motor vehicle.[1]

■ There were no eye witnesses to this tragic accident, except the two surviving occupants of the automobile, Tinius and Williams. No persons were inside the crashed vehicle when emergency personnel, law enforcement officers, and others arrived at the scene. Tinius and Williams told law enforcement officers at the scene that Cullor was the driver, although their statements were conflicting at times. Both testified at trial that Cullor was driving. Cullor had driven the car on prior occasions, and was known to generally prefer driving a vehicle over riding as a passenger, especially after drinking at bars.

On the other hand, a motorist who came upon the accident scene overheard Tinius say she "killed" her uncle. Williams told the same motorist Tinius had "killed her uncle." Tinius told a waitress as she left a bar with Williams and Cullor prior to the accident that she had "driven in worse shape than this."

The physical evidence at the accident scene indicated Cullor occupied the back seat of the car at the time of the accident. An accident reconstructionist testified the vehicle rolled or flipped side-to-side. Cullor was thrown from the car during the accident. The entire hatchback window of the vehicle was broken out, and Cullor was found with glass particles on and around him. The spare tire from the back of the vehicle was also found on the ground next to him. A piece of carpet from the hatchback area was underneath him and partially wrapped over his legs. The rubber molding from the hatchback window was found under Cullor. The floor mats from the rear of the vehicle were at his feet. A hair similar to Cullor's was found wedged in the hatchback piston rod.

A second accident reconstructionist pinpointed Tinius as the driver. Considering the direction in which the car rolled, the left side injuries sustained by Tinius were consistent with driving and the right side injuries to Williams were consistent with occupying the position of front-seat passenger.

We conclude there was substantial evidence Tinius was operating the vehicle. We affirm on this issue.

## II. Jury Misconduct

Tinius further claims she is entitled to a new trial because the jury used a dictionary during its deliberations. She argues the trial judge erred by failing to grant her motion for new trial.

■ The trial court may grant a new trial when, among other grounds, the jury "received any evidence, paper or document out of court not authorized by the court." Iowa R.Crim.P. 23(2)(b)(2). Three conditions, however, must be met to obtain a new trial based on jury misconduct. *State v. Johnson*, 445 N.W.2d 337, 341 (Iowa 1989). First, there must be competent evidence bearing on the misconduct. *Id.* Secondly, the misconduct must exceed the tolerable bounds of jury deliberation. *Id.* Finally, the misconduct must have been "calculated to, and with

---

1. Tinius argued in her brief that the State failed to prove she "operated a motor vehicle while under the influence of alcohol or while having an alcohol concentration of .10 or more." However, she did not pursue a specific claim of insufficient evidence of intoxication. The record revealed Tinius' blood alcohol content was .136. She also acknowledged in her testimony at trial that she was probably intoxicated at the time of the accident. There was substantial evidence in the record of Tinius' intoxication.

reasonable probability did, influence the verdict." *Id.*

■ The trial court has broad discretion in ruling on motions for a new trial based on jury misconduct. *State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984). An abuse of discretion is not found unless the decision was clearly unreasonable. *Id.*

■ The use of a dictionary or other similar nonlegal materials by the jury during their deliberations constitutes jury misconduct. *See generally*, Jean E. Maess, Annotation, *Prejudicial Effect of Jury's Procurement or Use of Book During Deliberation in Criminal Cases*, 35 A.L.R.4th 626 (1985). It introduces outside information into the process and falls outside the tolerable bounds of jury deliberations. *See Johnson*, 445 N.W.2d at 342. Consequently, we focus our attention on the prejudice prong of the three part test.

■ A common sense approach is followed in considering whether jury misconduct was designed to influence the verdict and likely did influence the verdict. *Id.* The claim of influence is critically examined in light of all the evidence, including the demeanor of witnesses, and issues presented. *Id.* A review of prior decisions from our courts reveals the prong is not easily satisfied. *Id.* Moreover, misconduct involving the use of a dictionary during deliberations has generally been found by courts in other jurisdictions to be harmless. *See* Maess, *supra* at 645–51.

■ We find no abuse of discretion by the trial court in refusing to grant a new trial because the jury used a dictionary during their deliberations. The trial judge made a full inquiry into the issue. The dictionary was used by the jury solely to assist in the definition of the word "reasonable." The definition provided by the dictionary was fairly innocuous and referred essentially to the "use of reason." The dictionary meaning did not conflict with the legal concept of "reasonable doubt," as explained in the instructions, and did not contradict any other aspect of the jury's instructions. The dictionary definition was also compatible with the common meaning of the word. We affirm the trial court.

**AFFIRMED.**