# IN THE COURT OF APPEALS OF IOWA

No. 13-1094
Filed July 30, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LARRY DAVID TWIGG,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, James D. Coil,

District Associate Judge.


        A defendant appeals challenging the sufficiency of the evidence and the

weight of the evidence to support his conviction, and challenging his sentence.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

        Larry D. Twigg, Des Moines, appellant pro se.

        Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Peter Blink, Assistant

County Attorney, for appellee.


        Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**VOGEL, P.J.**

Larry Twigg appeals his convictions and sentences for five counts of lascivious conduct with a minor, in violation of Iowa Code section 709.14 (2009). He alleges, pro se, that sufficient evidence does not support his convictions as to four counts and also the weight of the evidence does not support his conviction as to the final count. He also alleges, with the assistance of appellate counsel, that the district court abused its discretion in failing to articulate a reason for imposing consecutive sentences in this case. Because we find there is sufficient evidence to support the guilty verdicts on counts I through IV, the court did not abuse its discretion by denying the motion for a new trial, and the court provided sufficient reasons for imposing consecutive sentences, we affirm Twigg's convictions and sentences.

**I. Background Facts and Proceedings.**

This is the second time this case has come before our court. The facts were sufficiently set out in the previous opinion, and we will not repeat them here except as is necessary in referencing a specific claim. *See State v. Twigg*, 11-0733, 2012 WL 3590045, at *1–2 (Iowa Ct. App. Aug. 22, 2012). In the first appeal, as a result of what our court determined was inadmissible evidence, the case was reversed and remanded for a new trial. *Id.* at *8. The case was retried to a jury in May of 2013. The jury once again found Twigg guilty of all five counts of lascivious conduct with a minor due to actions Twigg took as the victim's teacher while the victim was in his home. The court denied Twigg's motion for a judgment of acquittal both at the close of the State's case and at the close of the evidence. The court also denied Twigg's motion for a new trial prior to

sentencing. The court sentenced Twigg to one year incarceration on each of the five counts. The sentences on counts II through V were to run concurrent to each other but consecutive to the sentence on count I. This was the same sentence imposed following the first trial. Twigg now appeals, challenging the sentence and the evidence to support his convictions.

## II. Scope and Standards of Review.

Twigg's assertion the court should have granted his motion in arrest of judgment is in fact a challenge to the sufficiency of the evidence.[1] We review challenges to the sufficiency of the evidence for correction of errors at law. *State*

---

[1] In his pro se brief, Twigg bases his claims on the district court's denial of his motion in arrest of judgment. He claims the court abused its discretion in not granting his attorney's motion in arrest of judgment. *See State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008) (noting the appellate courts review the denial of a motion in arrest of judgment for an abuse of discretion). Twigg's attorney's motion in arrest of judgment, however, was premised on the lack of sufficient evidence to support the guilty verdicts on counts I through IV. A motion in arrest of judgment is not a proper vehicle to challenge the sufficiency of the evidence presented at trial. *See State v. Oldfather*, 306 N.W.2d 760, 762 (Iowa 1981) ("A motion in arrest of judgment may not be used to challenge the sufficiency of evidence."); *see also State v. Dallen*, 452 N.W.2d 398, 399 (Iowa 1990) (noting that while a motion in arrest of judgment may be filed after a verdict of guilty, the motion in usually made to challenge the adequacy of a guilty plea and may not be used to challenge the sufficiency of the evidence). The proper way to challenge the sufficiency of the evidence, and preserve such a claim for appellate review, is through a motion for judgment of acquittal made at trial. *See State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004) ("To preserve error on a claim of insufficient evidence for appellate review in a criminal case, the defendant must make a motion for judgment of acquittal at trial . . . ."). We note counsel raised sufficiency challenges by moving for a judgment of acquittal at the close of the State's case and at the close of all the evidence and then made the same sufficiency claims in his posttrial motion in arrest of judgment. In addressing the posttrial motion in arrest of judgment, the district court applied the sufficiency-of-the-evidence test and concluded the evidence was sufficient to sustain the guilty verdicts, just as it concluded the evidence was sufficient when the motions for judgment of acquittal were made during trial. There are therefore no error preservation concerns regarding the sufficiency-of-the-evidence challenge. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (internal quotation marks and citations omitted)). We will therefore address Twigg's pro se claims as a challenge to the sufficiency of the evidence, despite the fact that he postures his claims in his pro se brief incorrectly on the court's denial of the motion in arrest of judgment rather than the court's denial of his motions for judgment of acquittal.

*v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009).  We need to determine whether the evidence could convince a rational trier of fact that the defendant is guilty of the crime beyond a reasonable doubt.  *Id.*  In doing so, we view the evidence in the light most favorable to the State.  *Id.*

We review Twigg's claim that the court should have granted his motion for a new trial based on the weight of the evidence for abuse of discretion.  *See State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998) ("Trial courts have wide discretion in deciding motions for new trial.").  To prove the court abused its discretion, Twigg must show the court exercised its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable."  *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

Finally, we review a district court's decision to impose consecutive sentences for an abuse of discretion.  *State v. August*, 589 N.W.2d 740, 744 (Iowa 1999).  The court is required to state on the record the reasons it imposed a particular sentence including the reason for imposing consecutive sentences.  *State v. Evans*, 672 N.W.2d 328, 331–32 (Iowa 2003).  The reasons need not be detailed but must be sufficient to allow for our review of the discretionary action.  *Id.*

## III.  Sufficiency of the Evidence—Counts I–IV.

Twigg was convicted of violating Iowa Code section 709.14 in five different counts.  This code section provides,

> It is unlawful for a person over eighteen years of age who is in a position of authority over a minor to force, persuade, or coerce a minor, with or without consent, to disrobe or partially disrobe for the purpose of arousing or satisfying the sexual desires of either of them.

Iowa Code § 709.14. No party objected to the jury instructions given in this case, and they therefore become the law of the case, right or wrong. *See Canal*, 773 N.W.2d at 530. We review the sufficiency of the evidence in light of the jury instructions given. *Id.* The marshalling jury instruction of each count mirrored the trial information charges, and Twigg only challenges the evidence to support the first element of each count's marshalling jury instruction as being insufficient.

**A. Count I.** The first element of the marshalling instruction for count I stated:

> 1. On or about the 9th day of December, 2009, the defendant forced, persuaded, or coerced [the victim], with or without [the victim's] consent, to disrobe or partially disrobe by having [the victim] play a video game and having [the victim] remove an article of clothing each time he was killed during the game during which [the victim] removed clothing down to be only covered by boxers.

Twigg asserts there was insufficient evidence that the victim "removed clothing down to be only covered by boxers" because the victim testified on cross-examination Twigg did not make him remove his clothes until the end of the game and then the victim got down to his boxers so quickly that he did not have his pants fully off when Twigg told him to get his clothes back on. Twigg claims because evidence shows the victim's pants were not fully off his body, there is insufficient proof the victim "removed" the clothing such that he was "only covered by boxers" as stated in the jury instructions.

We find Twigg's argument requires an overly constrained interpretation of the language used in the instruction. The jury was instructed to consider the evidence, make deductions, and reach conclusions according to "reason and common sense." The evidence showed the victim had all other clothing off of his

body and had pulled down his pants, leaving his genital and buttocks areas covered only in boxers when Twigg told him to put his clothing back on. The fact his pants may have remained round his ankles does not render the evidence insufficient to prove the victim was "only covered by boxers" as stated in the instruction. We find sufficient evidence to prove element one of count I.

**B. Count II.** Next, Twigg challenges the "forced, persuaded, or coerced" language in element one of count II.

> 1. On or about the 9th day of January, 2010, the defendant forced, persuaded, or coerced [the victim], with or without [the victim's] consent, to disrobe or partially disrobe by having [the victim] play a video game and having [the victim] remove an article of clothing each time he was killed during the game during which [the victim] removed clothing down to being nude, only covered by a towel.

Twigg claims that because the victim was fully aware, in light of the previous experience a month earlier, what was going to be expected of him if he chose to come over to make up school assignments or earn money, the evidence is insufficient to prove he exercised any sort of force, persuasion, or coercion on the victim. The victim testified he only went back to the house the second time because he needed the money and needed to make up for the rest of the missing assignments. In addition, the instruction clearly states that the "consent" of the victim is not material to the analysis. By offering the victim money and an improved grade to come to his house and play the video game, we find sufficient evidence for the jury to conclude Twigg persuaded or coerced the victim.

**C. Counts III and IV.** Next, Twigg challenges the sufficiency of the evidence that the victim "disrobed" or "stripped down" in counts III and IV.

Count III Element one states: "On or about the 9th day of January, 2010, the defendant forced, persuaded, or coerced [the victim], with or without [the victim's] consent, to disrobe or partially disrobe by having [the victim] strip down to his boxers and make snow angels in the defendant's yard."

Twigg claims the victim was covered by a towel at the time this incident began and actually put clothes on—his boxers—to perform the snow angel. He claims the victim did not take clothes off or "strip down." The victim testified when he finally beat the video game he was in only a towel that went down to his ankles. In playing the video game, the victim had made up for his past due assignments and earned $35 from Twigg; however, the victim needed more money to pay back Twigg for covering his prior cell phone bill. Twigg offered to give him additional money if he would do another item off the list, so the victim chose to do snow angels, which required him to go into the backyard wearing only his boxers and perform two snow angels, one on his front and one on his back. This obviously required him to change from the towel into his boxers to perform the task. The victim stated on cross-examination that he put on his boxers and then took off the towel. We find this evidence sufficient to prove the victim disrobed or stripped down when he removed the towel, leaving the victim only wearing boxers.

Count IV: Twigg makes a similar claim against element one of count IV, which states:

> 1. On or about the 9th day of January, 2010, the defendant forced, persuaded, or coerced [the victim], with or without [the victim's] consent, to disrobe or partially disrobe by having [the victim] strip down to his boxers and poured chocolate syrup and other food items on [the victim] in the bath tub.

The victim testified that after he came back inside from performing the snow angels, he was wet due to the snow. He changed into a dry pair of boxers he brought with him and then he believed he put the rest of his clothes on. However, he realized he needed additional money to pay his current cell phone bill, so Twigg instructed him to pick another item off the list. The victim chose "dessert mix," which the victim testified required him to put on a "seasonal boxer and hat set" provided by Twigg and allow Twigg to pour various items over him while he stood or sat in the bathtub. The victim stated Twigg would pour the items over his shoulders, on his back, and on his front and Twigg asked the victim to pull his boxers forward and backward so that he could pour the items down them. Afterward, the victim took a shower and got dressed.

Twigg claims that the act of changing from his boxers into the seasonal boxer and hat set did not result in the victim having to "strip down to his boxers." We disagree. The evidence, taken in the light most favorable to the State, indicates the victim changed out of his wet boxers, got into dry boxers, got dressed, and then removed his clothing to put on the "seasonal boxer and hat set." This clearly shows the victim disrobed and stripped down before Twigg poured the various items on the victim.

We find the evidence sufficient to sustain the verdicts on counts I through IV.

**IV. Weight of the Evidence—Count V.**

Next, Twigg claims the court should have granted his motion for a new trial based on his claim that the weight of the evidence did not support his

conviction for count V. The first element of the marshalling jury instruction for count V stated:

On or about the 9th day of January, 2010, the defendant forced, persuaded, or coerced [the victim], with or without [the victim's] consent, to disrobe or partially disrobe by having [the victim] strip down to his boxers and lay on a bed while the defendant spanked him multiple times.

Twigg again challenges the disrobing or stripping down language in count V. Twigg acknowledges the victim testified he believed he put his clothes back on before being required to wear only his boxers for the spanking incident. However, because the victim seemed to be uncertain as to whether or not he got dressed after the "dessert mix" incident, Twigg asserts the weight of the evidence does not support his conviction.

First, Twigg mischaracterizes the weight-of-the-evidence standard when he describes it as a "lesser" standard to meet. It is true that the weight-of-the-evidence test is broader in that it permits the court to take into consideration witness credibility, where this is not a consideration in the sufficiency-of-the-evidence analysis. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). However, this does not mean it is a "lesser" standard to meet. Our appellate review of this claim is limited to a review of the court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. *Reeves*, 670 N.W.2d at 203.

Second, we find no abuse of discretion in the district court's denial of the motion for a new trial. The victim testified on direct that after the "dessert mix" incident he took a shower and got dressed. It was then that Twigg explained to the victim that he had more assignments missing and he could either do the

assignments or choose another item on the list. Only two items remained on the list, both required spanking but one required the victim to be nude and the other the victim could be in boxers. The victim chose the boxers option. Following this incident the victim then put his clothes back on, and Twigg took him home. While it is true the victim on cross-examination stated he "believed to the best of his knowledge" he got dressed after his shower and before the spanking, but he had trouble remembering the exact sequence, this does not mean the court abused its discretion in denying the motion for a new trial.

> [W]e caution trial courts to exercise this discretion carefully and sparingly when deciding motions for new trial based on the ground that the verdict of conviction is contrary to the weight of the evidence. . . . [A] failure to follow it would lessen the role of the jury as the principal trier of the facts and would enable the trial court to disregard at will the jury's verdict.

*Ellis*, 578 N.W.2d at 659. The motion should be granted only in an "extraordinary case where the evidence preponderates heavily against the verdict." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). We find no abuse of discretion in the district court's denial of Twigg's motion for a new trial. *See State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004).

**V. Consecutive Sentences.**

Finally, Twigg contends on appeal that the district court abused its discretion in sentencing because the court failed to state on the record its reasons for imposing consecutive sentences.

At the sentencing in this case, Twigg's attorney asserted, and the district court agreed, that a harsher sentence than the one imposed following the first trial—a total of two years in prison—could not be imposed in light of the United

States Supreme Court's holding in *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969)—"[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." The Supreme Court required the reasons to be based on "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726.[2]

After announcing the sentence and confirming that it did not consider the fact there had been a prior conviction for these offenses and an appeal, the court stated its reasons for imposing the sentence as follows:

> You did build a relationship of trust with the victim in this case. The evidence was that you gave him special consideration in making him, in effect, somewhat your assistant, and you did use that relationship in how you dealt with the victim. You isolated him in a place in your own home, and certainly based on the trust that he placed in you, he acquiesced to your plan here, I guess.
> The other factor or one of the other factors is not only your relationship with the victim but the fact that you are a teacher, and as a teacher, you were a mandatory reporter of child abuse. I wondered if this had been reported to you that someone else had performed these activities with a student what you would have done, whether or not you would have reported it and how you would have viewed it yourself had this been done by someone else.
> Certainly, you didn't self-report, and being a mandatory reporter you knew what the limitations were with students. I've also taken into fact—into consideration the fact that the contact escalated. That you went from the first incident where the victim

---

[2] Our courts have noted the Supreme Court has limited the holding in *Pearce* and restricted the presumption of vindictiveness in subsequent cases. *See State v. Bower*, 725 N.W.2d 435, 446–47 (Iowa 2006). Our courts have summarized the state of the law regarding imposing a harsher sentence on retrial to be the presumption of judicial vindictiveness does not apply "when a different judge sentences a defendant after a retrial, *and* that judge articulates logical, nonvindictive reasons for the sentence." *State v. Mitchell*, 670 N.W.2d 416, 424 (Iowa 2003). However, no party on appeal in this case contends the district court was mistaken in agreeing with defense counsel at sentencing that Twigg's sentence could not be increased upon retrial. We do note a different judge sentenced Twigg following the retrial, and thus, the court could have increased the sentence so long as the court articulated logical, nonvindictive reasons for the sentence imposed. *See id.*

disrobed to the second incident where he disrobed, you had him perform other things, the snow angels. You had him disrobe in the bathroom where you used the other items to pour over him, and probably what is most disturbing is that the last act involved physical contact with the victim.

There are a lot of things that the courts have to take into consideration in imposing sentences in criminal cases; and the courts are called upon to balance what is in the best interests of the community, society as a whole, the victim as well as the defendant. And in considering the public and society's interests, the court needs to insure the protection of the public and in this particular case particularly children that you may come in contact with in the future.

The court also has to take into consideration the deterrent effect on other individuals as well, and not only the deterrent effect on you but certainly there is too many reports of children who are abused and sexually abused in our society, and we do take the abuse of those children extremely seriously. The other thing that courts take into effect, obviously, is the rehabilitation of the defendant, and in balancing the protection of society as well as your rehabilitation, I do find that you will, hopefully, be placed in a sex offender treatment program while you are in prison and that that will have some effect on your future behaviors.

That may be available to you as being on probation, but, again, in balancing all of those factors I don't believe that probation is appropriate because of the protection factor. Also I believe that there are factors of punishment and in this case somewhat retribution. Individuals that commit offenses of this nature must understand that there are going to be adverse consequences and certainly, in some instances, severe adverse consequences for behaviors that occur in our society. Hopefully that is a deterrent, again, to others from committing offenses such as these. So for all of those reasons, Mr. Twigg, I believe that the sentence is appropriate.

Twigg claims the court did give sufficient reasons to support its decision to impose incarceration instead of suspending the sentence as requested by defense counsel. But he maintains the court failed to link any reason to the imposition of consecutive sentences.

We believe the court's reasons for imposing consecutive sentences can be gleaned from its overall sentencing plan. While the court was under the

mistaken impression that it could not impose a harsher sentence, nowhere does the record show that the court mistakenly thought it could not impose a lighter sentence. This is not a case where the record indicates the court thought it had no discretion in imposing consecutive sentences. *See State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989). The court was concerned with the fact the contact escalated between the first incident in December 2009 and the subsequent incidents a month later in January 2010. The court was concerned with protecting the community from future offenses committed by Twigg and concerned that Twigg be afforded the sex offender treatment he needed. It was also cognizant the sentence should signal to others in the community that offenses of this nature would result in severe adverse consequences. All these considerations point to the conclusion the court wanted to impose the harshest penalty it thought permissible, which is exactly what it did by imposing consecutive sentences to result in a total of two years in prison. We find no abuse of discretion.

Because we find the court gave sufficient reasons for imposing consecutive sentences and the evidence supports the verdict, we affirm Twigg's convictions and sentences.

**AFFIRMED.**